[L. A. No. 16770.   In Bank.—April 10, 1939.]

BLOSSOM GRAY MacPHERSON, Respondent, v. CAMERON O'DAY MacPHERSON, Appellant.

Bettin, Painter & Wait, D. Howard Painter and Ray H. Kinnison for Appellant.

Gibson, Dunn & Crutcher, Thomas H. Joyce, George D. Jagels and Van C. Niven for Respondent.

WASTE, C. J.—In this proceeding, which pertains to the custody of two minor children, defendant has appealed from that portion of a judgment which orders him to pay attorneys' fees, expenses, and costs incurred in furtherance of the efforts of plaintiff, his former wife, to locate the children and have them returned to her. Plaintiff moves to dismiss the appeal.

It is urged, as ground for the motion to dismiss, that appellant is not entitled to seek the aid of an appellate tribunal because of his wilful and continuing contempt of court, in that he has contumaciously removed the children from the jurisdiction of California, in direct violation of the judgments

and orders of the courts of this state, and is having them reside in the Republic of Mexico, solely for the purpose of thwarting and defeating said judgments and orders, in obdurate defiance of legal processes, and in disregard of the provisions made by law for the protection of minors, for safeguarding their welfare, and for controlling their custody. The facts establish the truth of this charge.

On October 17, 1930, plaintiff and appellant, then living separate and apart, executed a property settlement agreement which set forth a detailed plan for the custody of their two minor children, then aged seven and five and one-half years, respectively. Among other things, it was provided that custody and control of the children (subject at all times to modification by any court of competent jurisdiction upon application of either party) should remain in plaintiff, but that appellant should have the right to have them with him during a two months' summer vacation period each year, and should have the right to see them at other reasonable times. It was expressly agreed that "the said children shall, at no time, be taken outside of the borders of the United States of America, except with the mutual consent of the parties hereto, or upon application to and order of a court of competent jurisdiction", and "that either party may apply to the court, by stipulation or notice, to the effect that this agreement may be embodied and become a part of a court order in any action for divorce that might hereafter be maintained by either party to this agreement".

On October 22, 1930, plaintiff sued appellant for divorce. He was duly served but did not appear in the action, and his default was regularly entered. On November 21, 1930, plaintiff was awarded an interlocutory decree of divorce, which by reference incorporated the terms of the property settlement agreement and which also expressly provided that she should have custody and control of the minors.

Until the fall of 1936, apparently no difficulty was encountered by the parties in giving effect to the custody provision. Except for a vacation spent with appellant during two months or more of each summer, the children remained with plaintiff. She remarried and established a family home in Greenwich, Connecticut. Appellant also remarried and continued to reside in southern California. On July 1, 1936,

plaintiff brought the children from Connecticut to appellant in Santa Monica for their annual vacation visit. She returned to Connecticut in the latter part of August, having arranged with appellant to deliver the children to her in New York on September 14th. Appellant failed to conform to this plan. On September 15th, and again on September 30th, plaintiff made demands upon him for the children, which demands were unheeded. Plaintiff then employed counsel in Los Angeles and with their assistance sought and obtained an order to show cause (1) why appellant should not be adjudged in contempt of court for his refusal to yield custody of the children pursuant to the court order entered as a part of the interlocutory decree of divorce; (2) why appellant should not be compelled forthwith to deliver both children and custody thereof to plaintiff; (3) why the interlocutory decree of divorce, and property settlement agreement forming a part thereof, should not be modified to give plaintiff exclusive custody of the children during their minority, with a limited right only in appellant to visit them at their home; (4) why appellant should not be compelled to pay the full amount of costs incurred in bringing legal proceedings, and for transportation of plaintiff and the children between Connecticut and California, together with other expenses of recovering custody; and (5) why such further order as the court might deem equitable should not be made.

This order to show cause was set for hearing on October 29, 1936. Plaintiff came from Connecticut to testify, and prior to the hearing was permitted by appellant to visit the children at his residence for a period of about ten minutes. But when the matter was called in court, appellant made only an alleged special appearance, solely for the purpose of moving to quash, dismiss, or strike the order to show cause, and the petition and affidavit upon which it was based. His motion to quash was granted. Plaintiff thereupon attempted to secure service upon him of a new order to show cause, but without success. Neither private process servers nor the sheriff of Los Angeles County could locate him, and they were informed that he and the children no longer resided in Santa Monica. During succeeding weeks plaintiff, although worried and severely ill, exhausted every means at her command to find the children. She procured an order for taking

them, and appellant, into custody under sections 1497 and 1498 of the Penal Code, and employed a firm of private investigators to search for them. She obtained a warrant charging appellant with child stealing, and also conferred with the United States attorney at Los Angeles concerning the possibility of obtaining a federal warrant for his arrest. In all of these efforts she was unsuccessful. Finally she returned to her home in Connecticut. There, in December, 1936, a young friend of the children received a letter from one of them, the envelope of which bore an illegible postmark. This postmark was identified by an expert as "Mexico D. F."

With this clue to appellant's whereabouts, plaintiff resumed her endeavors to regain the children. She petitioned the District Court of Appeal for a writ of mandate to compel the Los Angeles superior court to hear the original order to show cause, with respect to which that court had previously granted appellant's motion to quash. The District Court of Appeal concluded that the order to quash was erroneous because appellant's purported special appearance had in fact constituted a general appearance. It further concluded that inasmuch as appellant had avoided the service of a second order to show cause, thereby rendering that remedy merely nominal, plaintiff was entitled to writ of mandate to compel the superior court to proceed with the hearing upon the original order. (*MacPherson* v. *Superior Court*, 22 Cal. App. (2d) 425 [71 Pac. (2d) 91].)

The writ issued on August 25, 1937, and the matter was set for hearing in December. Plaintiff again journeyed to California to appear as a witness, and after reaching this state she made one more attempt to reach appellant and negotiate with him. She asked the telephone operator to connect her with his residence in Cuernavaca, Mexico. Appellant himself answered the telephone. Although he permitted her to talk to both of the children, he refused unconditionally to return to the United States, or to discuss the matter of their custody.

The hearing was commenced on December 6th, and at its conclusion the trial court found the facts to be substantially as above set forth. It found also that appellant was a man of wealth, whereas plaintiff was without means or property with which to finance her efforts to recover the children, to compensate her attorneys, or to reimburse them for costs which

they had advanced in reliance upon appellant's ability to pay. It was for the best interests and welfare of the children, so the court found, that plaintiff should pursue them and obtain custody. Pursuant to these findings, and on January 5, 1938, the court (1) ordered that appellant immediately deliver the children to plaintiff; (2) adjudged appellant guilty of contempt of court and imposed upon him the maximum penalty provided by section 1218 of the Code of Civil Procedure of five days imprisonment and $500 fine; (3) modified the interlocutory and final decrees of divorce to provide that from date until July 1, 1940, appellant should not have the children during the summer vacation period, although he might visit them at plaintiff's residence at reasonable times, and upon reasonable notice; (4) ordered appellant to pay to plaintiff for her expenditures and obligations incurred in endeavoring to obtain possession of the children, the sum of $7,500 ($5,000 for attorneys' fees, $1,000 to cover expenditures made on behalf of plaintiff, and $1500 for other costs and expenses incurred by plaintiff); (5) ordered appellant to pay to plaintiff on January 13, 1938, an additional $10,000 ($7,500 for attorneys' fees and $2,500 for costs), to be used by plaintiff in pursuance of the custody proceedings, provided that appellant might be relieved of this obligation by proving to the satisfaction of the court on or prior to January 12th, that he had delivered the children to plaintiff; (6) ordered issuance of a bench warrant for appellant's apprehension, with bail thereon fixed at $5,000; and (7) ordered issuance of a commitment, committing appellant to the custody of the Los Angeles County sheriff, to be imprisoned in execution of the contempt judgment and sentence pronounced thereon.

On February 11, 1938, appellant filed a notice of appeal from that portion of the order which awarded plaintiff attorneys' fees and costs in the respective sums of $7,500 and $10,000. Plaintiff asks that the appeal be dismissed because of appellant's continuing contempt. So far as the present record shows the children are still domiciled in the Republic of Mexico. They have now attained the ages of 15 and 14 years, respectively. They have been told, so plaintiff avers, that she wished to have them arrested, and to some degree at least their affections have been alienated. Plaintiff fears,

as well she may, that unless she soon regains their custody, she will never be able again to win their love and understanding.

In secluding the children in a foreign country and alienating them, appellant violated not only his agreement with plaintiff and the provisions of the interlocutory and final decrees of divorce, but he has also wilfully and purposely evaded legal processes and contumaciously defied and nullified every attempt to enforce the judgments and orders of the California courts, including the very order from which he seeks relief by this appeal. Such flagrant disobedience and contempt effectually bar him from receiving the assistance of an appellate tribunal. A party to an action cannot, with right or reason, ask the aid and assistance of a court in hearing his demands while he stands in an attitude of contempt to legal orders and processes of the courts of this state. (*O'Neill* v. *Thomas Day Co.,* 152 Cal. 357 [92 Pac. 856, 14 Ann. Cas. 970] ; *Schubert* v. *Superior Court,* 109 Cal. App. 633 [293 Pac. 814] ; *Weeks* v. *Superior Court,* 187 Cal. 620 [203 Pac. 93] ; *Funfar* v. *Superior Court,* 107 Cal. App. 488 [290 Pac. 626] ; *Soderberg* v. *Soderberg,* 63 Cal. App. 492 [219 Pac. 82].)

In *Weeks* v. *Superior Court, supra,* the petitioner, having removed a minor, and while contumaciously keeping the child outside of the state in order to prevent the husband from gaining possession and custody in accordance with the terms of an interlocutory decree of divorce, applied to this court for writ of mandate to compel the superior court to enter a final decree. This court, citing the above rule, held that petitioner should not be allowed to make application for a final decree of divorce until she had submitted to the lawful order of the superior court in relation to the custody of the child, or otherwise purged herself of the contempt.

Again, in *Knoob* v. *Knoob,* 192 Cal. 95 [218 Pac. 568], while counsel for appellant were prosecuting her appeal from a modified decree of custody, appellant removed both herself and the minor to the Republic of Guatemala in violation of the terms of the decree appealed from. The respondent thereupon moved to dismiss the appeal upon the ground that "the appellant was a fugitive from justice and in contempt of court, and for that reason not entitled to invoke the aid of

the court''. Granting the motion to dismiss, this court said: ''But one conclusion can be reached from the foregoing facts. It is very clear that the appellant has determined to set at naught the due process and orders of the courts of California, and does not intend to obey their mandate respecting the custody of the minor child. Under such circumstances she is not entitled to press her appeal in this court. By her appeal she is seeking the court's aid, and it is manifestly just and proper that in invoking that aid she should submit herself to all legitimate orders and processes. . . . Her past actions indicate that not only is she determined to set at naught the authority of the trial court, but that her attitude will be the same toward any judgment or order made by this court in disposing of her appeal. The appeal is dismissed.''

█ Appellant here contends that the court lacked jurisdiction to adjudge him guilty of contempt because there is no evidence that he received notice or had actual knowledge of the terms of any order or judgment which he is charged with violating, or of the granting of the interlocutory decree of divorce (entered upon his default), or of the terms of the final decree. For this reason, appellant asserts, the alleged contempt cannot serve as a basis for depriving him of his right of appeal. There are several answers to this contention. The one most obvious is that the portions of the order adjudging appellant guilty of contempt are not here under review. The present appeal is only from those provisions of the order which relate to allowance of attorneys' fees and costs, and the bill of exceptions is limited to evidence bearing on that subject. As certified, the bill only purports to correctly set forth ''all of the proceedings had during the trial of said cause and all of the evidence offered therein in so far as the same applies to attorneys' fees and costs of expenses. . . . ''. It does not purport to include the evidence relating to the issue of contempt. On this appeal, therefore, it must be presumed that there was sufficient proof of all facts necessary to support the contempt adjudication. █ But we may also observe that the evidence which is contained in the present record clearly indicates that appellant had full knowledge of the custody provisions of the divorce decrees. That he had ''actual notice and knowledge'' of the terms and con-

ditions of the interlocutory decree of divorce, including the custody provision thereof, is averred by plaintiff in her affidavit filed in support of the order to show cause upon which the contempt adjudication was based. The affidavit is a part of the present bill of exceptions. Moreover, in view of the conduct of the parties with respect to custody of the minors over the period from 1930 to 1936, it would test credulity to believe that appellant was without actual knowledge of the terms of the custody provision. Actual notice or knowledge is all that is required. (4 Cal. Jur. Supp., p. 12, sec. 21, cases cited.)

Appellant complains that the court had no jurisdiction to make an allowance of attorneys' fees after the services had been rendered, or an allowance of costs after the expenditures had been made. Therefore, he argues, a portion at least of the order appealed from is void, and an appeal will lie even though he may be in contempt of court. This argument overlooks the fact that even though a portion of the order appealed from may be void, or erroneous, or unsupported by sufficient evidence, nevertheless the adjudication of contempt is presumably valid, and until that contempt is purged appellant is not entitled to a hearing before an appellate tribunal. The merits of the claims urged by him in support of his appeal will not be determined, nor will the appeal be heard while he persists in his contumacious attitude.

Lastly, appellant asserts that inasmuch as he has already been sentenced to the maximum punishment for contempt prescribed by section 1218 of the Code of Civil Procedure ($500 fine and 5 days imprisonment), no further penalty by way of refusing to hear his appeal can be imposed upon him. The contention is without merit. There is no language in section 1218 which in any way places a limitation upon the power of the courts to refuse a hearing to contumacious litigants. The section merely states that where a person is adjudged guilty of contempt "a fine may be imposed on him not exceeding five hundred dollars, or he may be imprisoned not exceeding five days, or both". This statute will not be construed to infringe upon the courts' inherent power to ignore the demands of litigants who persist in defying the legal orders and processes of this state.

No other questions merit discussion. The appeal is dismissed.

Edmonds, J., Curtis, J., Shenk, J., and Langdon, J., concurred.

Rehearing denied.