116 Cal.Rptr.2d 577 (2002)
95 Cal.App.4th 1433
Guardianship of MELISSA W, a Minor.
Fran W. et al. Petitioners and Appellants,
v.
Terry W, Objector and Respondent.
No. B151211.
Court of Appeal, Second District, Division Three.
February 7, 2002.
Rehearing Granted March 5, 2002.
*578 Melodye S. Hannes, Van Nuys, and Richard A. Marcus, Los Angeles, for Petitioners and Appellants.
Freda D. Pechner, Garden Valley, for Objector and Respondent.
ALDRICH, J.

INTRODUCTION
Grandparents petitioned for guardianship of their minor granddaughter, Melissa. Following trial, the court found Melissa's father to be a fit parent, denied grandparents' petition, and ordered the child returned to father "forthwith." At grandparents' request, the trial court briefly stayed the relocation to enable the child to finish the school year. Grandparents filed their appeal but before returning the child to her father, grandparents' counsel escorted 16-year-old Melissa to the Bahamas where the child was purportedly married.[1] The fact of the marriage was not disclosed to father or to this court. Once father learned of the marriage, he *579 moved this court for dismissal of the appeal.
The egregious circumstances of this case require imposition of the ultimate sanction of dismissal of the appeal. Grandparents may not obtain review of the judgment while at the same time being in violation of the very judgment from which they appeal. Additionally, the conduct of grandparents and counsel in engineering Melissa's emancipation by way of the purported marriage has rendered moot the issue of guardianship. For these reasons, we grant father's motion and dismiss this appeal.

SUMMARY OF FACTS AND PROCEEDINGS
Briefly summarized, the undisputed facts establish that on March 28, 1997, Cheryle, Melissa's mother, died. She was survived by her husband, Terry (father) and their two daughters, then 11-year-old Melissa and 10-year-old Courtney. The family was residing in Los Angeles. Appellants are the decedent's parents and Melissa's grandparents, Fran and Arthur W. (grandparents). Father later relocated to Placerville but allowed his daughters to live with grandparents in Los Angeles to finish the school year. On July 23, 1999, grandparents filed a petition for guardianship of the minors. Eventually, Courtney returned to her father's custody.
On June 12, 2001, after three days of trial of the petition for guardianship of Melissa, the trial court issued a judgment denying the petition. The trial court specifically found, inter alia, that father is a fit and proper parent to his children; he has the ability to provide for their needs; it is in Melissa's best interest to be returned to her father's custody; and there is no basis for the trial court to interfere with the constitutionally protected fundamental right of father to parent his children. The trial court then ordered that Melissa "shall be returned to the custody of Respondent-Father, forthwith." (Italics added.) At their request for time to allow Melissa to finish the school year and the grandparents to appeal, the trial court granted grandparents a brief stay of the relocation order to July 7, 2001.
On June 27, 2001, grandparents filed their notice of appeal from the judgment denying the guardianship petition.
That same day, grandparents executed purported consent forms, granting their permission for Melissa, then aged 16, to marry 19-year-old Austin H. On the consent forms, grandparents indicated they were consenting as Melissa's legal guardians, despite the fact the June 12, 2001, judgment unambiguously denied grandparents' guardianship petition.[2] This purported consent was written on the letterhead of grandparents' counsel, Melodye S. Hannes.
On June 28, 2001, Melissa arrived in the Bahamas accompanied by attorney Hannes.
*580 Meanwhile, grandparents concurrently moved the trial court for a stay of the judgment pending appeal on the ground Melissa would suffer detriment if she were to reside with father during that time. In seeking that stay, grandparents failed to disclose to the trial court Melissa's imminent nuptials.
On June 29, 2001, grandparents filed a petition for writ of supersedeas in this court seeking a stay of the order directing Melissa's return to father, reiterating the grounds raised in the lower court, and likewise neglecting to inform this court of the planned wedding.
On July 2, 2001, Melissa was purportedly married in the Bahamas to Austin H. Attorney Hannes executed a Bahamian "Certificate by Parents or Guardian of Consent to Marriage by a Minor," indicating the grandparents' consent to the marriage. In procuring the marriage in the Bahamas, counsel did not disclose to the Bahamian Registrar General the June 12, 2001 judgment denying the guardianship petition.[3] The marriage was solemnized in the presence of Hannes as one of the witnesses.
On July 7, 2001, Melissa returned to her father in Placerville.
On July 19, 2001, grandparents filed a request in this court for an immediate stay of the judgment pending appeal. The attached declaration of Hannes's associate, attorney Richard A. Marcus, reported "two new events"[4] of which this court should be aware. Neither of those events was Melissa's purported marriage; no mention ivas made in the request of Melissa's marriage. On July 25, 2001, this court summarily denied the petition for writ of supersedeas and request for stay.
On July 30, 2001, father first learned of his daughter's Bahamian marriage when he found a note in his mailbox, signed "Melissa H." Father moved for a dismissal of grandparents' appeal. We issued an order to show cause why the appeal should not be dismissed, specially set the matter, and heard oral argument on February 4, 2002.

DISCUSSION

1. Effect of grandparents' defiance of judgment on their right to appeal.

Grandparents were promptly bound by the June 12, 2001, judgment denying their petition for guardianship, absent an applicable stay.[5] (Code Civ. Proc., § 917.7[6].) As indicated, the judgment included *581 a provision for a brief stay to July 7, 2001, but only of "the order to return Melissa" to her father. The purpose of staying relocation for a month was to enable Melissa to finish the school year. The court did not stay its order denying the guardianship petition and did not stay its order confirming custody in the father "forthwith." The trial court's unambiguous denial of the guardianship petition was immediately effective and binding upon the parties. (Ibid.) Because father retained legal custody, grandparents had no authority, under color of law or otherwise, to give their purported consent as guardians to Melissa's marriage. Likewise, counsel undermined the June 12, 2001, judgment by spiriting Melissa to the Bahamas, and participating in procuring a marriage designed to alter the child's legal status.[7] In doing so, grandparents and counsel sabotaged the very judgment of which they now seek review. "It is illogical and inequitable for appellants] to seek appellate review of the very orders [they have] blatantly violated." (In re Kamelia S. (2000) 82 Cal.App.4th 1224, 1227, 98 Cal.Rptr.2d 816.)
"It is well settled that this court has the inherent power to dismiss an appeal by any party who has refused to comply with the orders of the trial court. [Citations.]" (TMS, Inc. v. Aihara (1999) 71 Cal. App.4th 377, 379, 83 Cal.Rptr.2d 834.) "A party to an action cannot, with right or reason, ask the aid and assistance of a court in hearing his demands while he stands in an attitude of contempt to legal orders and processes of the courts of this state. [Citations.]" (MacPherson v. MacPherson (1939) 13 Cal.2d 271, 277, 89 P.2d 382.)
A formal judgment of contempt is not a prerequisite to exercising our power to dismiss. (Alioto Fish Co. v. Alioto (1994) 27 Cal.App.4th 1669, 1683, 34 Cal. Rptr.2d 244.) The power to dismiss "`applies to wilful disobedience or obstructive tactics without such an adjudication.' [Citations.]" (Ibid.)
The power to dismiss an appeal for violation of a court order has been exercised in the child dependency context. In Kamelia S., the child was ordered placed in foster care. The father appealed from that order, and while the appeal was pending, he took the law into his own hands and absconded with the minor. (In re Kamelia S., supra, 82 Cal.App.4th at pp. 1225-1226, 98 Cal.Rptr.2d 816.) The father's appeal was dismissed on the ground that appellant was not entitled to obtain review of the juvenile court's order while at the same time being in contempt of the very order from which he appealed. (Ibid.)
These authorities compel the conclusion that by subverting the trial court's judgment, grandparents and counsel have forfeited their right to prosecute this appeal. Grandparents lacked authority to consent to Melissa's marriage. Nonetheless, they and counsel orchestrated the Bahamian marriage to emancipate Melissa for the purpose of negating the effect of the judgment confirming custody in father. Grandparents and counsel actively participated in sabotaging the judgment. Their obstructive tactics call for the exercise of this court's inherent power to impose the ultimate sanction of dismissal.
*582 This court is troubled not only by the counsel's participation in the marriage, but also in the subsequent failure to advise this court of that event. Grandparents' counsel assert they were ethically precluded from revealing the fact of the purported marriage by principles of attorney-client privilege. However, marriage is a matter of public record (compare Fam.Code, § 511 [confidential marriage certificate not open to public inspection]), and the fact of the purported marriage entirely changed the posture of this case. It is astounding that in their many communications with this court, including updates of events in the case, counsel omitted any mention of something as pivotal and as public as the purported marriage and resulting emancipation (Fam.Code, § 7002, subd. (a)) of the very subject of this proceeding, with its mooting consequences as discussed in the next section.
This course of conduct in arranging the purported marriage to thwart the judgment, compounded by the subsequent concealment of that event from both this court and the trial court, compels the dismissal sanction.

2. Effect of Melissa's purported marriage on continued existence of controversy to be resolved on appeal.

As an additional and independent ground for dismissing this appeal, it appears the matter has been rendered moot by Melissa's purported marriage. The appeal was taken from the judgment denying grandparents' petition for guardianship of Melissa. Grandparents continue to insist the marriage is valid. If, as grandparents contend, Melissa is validly married, she is emancipated (Fam.Code, § 7002, subd. (a)), and no longer requires the protection of the guardianship grandparents seek. (In re Katherine R. (1970) 6 Cal.App.3d 354, 357, 86 Cal.Rptr. 281.) The conduct of grandparents and counsel in engineering the marriage has mooted the issue of guardianship. Consequently, review of the judgment denying guardianship would be an idle act.

3. Sanctions for frivolous appeal.

Father requests monetary sanctions, arguing grandparents are prosecuting this appeal for purposes of delay. (In re Marriage of Flaherty (1982) 31 Cal.3d 637, 183 Cal.Rptr. 508, 646 P.2d 179.) Although father has obviously incurred substantial attorney fees in the multiplicity of litigation that the guardianship petition has spawned,[8] the request for sanctions was not supported by a declaration setting forth the amount of attorney fees father incurred in responding to this appeal. Ordinarily, this court would request further briefing to perfect the sanctions issue. However, under the circumstances of this case, to avoid any further delay, the court summarily denies the request for sanctions on procedural grounds only.

DISPOSITION
The order to show cause is discharged. Father's motion to dismiss the appeal is granted and the appeal is dismissed. Father's request for sanctions is denied. Father shall recover from grandparents and their counsel his costs in this appeal.
The matter is referred to the State Bar for investigation. In that the dismissal is "based in whole or in part on the misconduct, incompetent representation, or willful misrepresentation of an attorney" (Bus. & *583 Prof.Code, § 6086.7, subd. (b)), the clerk of this court is directed forthwith to send a copy of this dismissal order to the State Bar.
We concur: KLEIN, P.J., and KITCHING, J.
NOTES
[1] The sole issue before us is whether the appeal is subject to dismissal due to the conduct of grandparents and their counsel. We do not pass on the validity of the purported marriage, which question is currently pending before the El Dorado Superior Court in father's annulment proceeding.
[2] Any claimed reliance by grandparents on a pretrial order granting temporary guardianship was unsupported. By way of background, on March 14, 2001, the trial court ordered temporary guardianship of Melissa to grandparents, pendente lite, to continue until May 21, 2001. Apparently, no letters of guardianship were issued. Father sought a writ of mandate in this court challenging the temporary guardianship. On April 12, 2001, in response to father's petition, this court issued a stay of all proceedings except for trial of the guardianship petition. This stay had the effect of placing guardianship in abeyance pending trial. In any event, irrespective of any claimed status as temporary guardians of Melissa prior to trial, grandparents clearly lacked authority after the adverse judgment to consent to Melissa's marriage, and counsel should have been aware of that fact.
[3] The Director of Legal Affairs of the Office of the Attorney General of the Commonwealth of the Bahamas opined the Bahamian Registrar General properly accepted grandparents' consent "as he was not in possession of the judgment." The Director explained application would have to be made to the Bahamian Supreme Court to have the marriage declared void on the ground consent was not validly given.

Similarly, California law requires written consent of parents or guardians in order for a minor to marry. (Fam.Code, § 302.)
[4] The new events were (1) Melissa claimed to be miserable at her father's house; and (2) an upcoming hearing was to be held in the trial court.
[5] As discussed in footnote 2 ante, although the trial court had granted temporary guardianship to grandparents before trial, that interlocutory order was superseded by the June 12, 2001 judgment which determined father was a fit parent and denied grandparents' petition for guardianship.
[6] Code of Civil Procedure section 917.7 states, "The perfecting of an appeal shall not stay proceedings as to those provisions of a judgment or order which award, change, or otherwise affect the custody, including the right of visitation, of a minor child in any civil action.... However, the trial court may in its discretion stay execution of these provisions pending review on appeal or for any other period or periods that it may deem appropriate. . . ."
[7] It is self-evident there is a world of difference between an attorney's advising a client of his or her legal options and the consequences thereof, as contrasted with affirmative conduct to frustrate a valid judgment not to one's liking by escorting a child to a foreign jurisdiction for the purpose of entering into a questionable marriage.
[8] The court is aware that a number of proceedings are pending in El Dorado County, including an action to annul the purported Bahamian marriage and a damages action against grandparents and their counsel. However, to reiterate, the only issue to be decided by this court in this order is whether the instant appeal is subject to dismissal.