132 Cal.Rptr.2d 482 (2003)
107 Cal.App.4th 986
In re C.C., a Person Coming Under the Juvenile Court Law.
Riverside County Department of Public Social Services, Plaintiff and Respondent,
v.
B.C., Defendant and Respondent;
C.C., Appellant.
No. E032112.
Court of Appeal, Fourth District, Division Two.
April 10, 2003.
Rehearing Granted May 9, 2003.
*483 Kathleen Murphy Mallinger, under appointment by the Court of Appeal, for Appellant.
Willaim C. Katzenstein, County Counsel, and Julie A. Koons, Deputy County Counsel, for Plaintiff and Respondent.
Jennifer Mack, under appointment by the Court of Appeal, and Richard Pfeiffer for Defendant and Respondent.
Rehearing Granted May 9, 2003. See 3 Cal.Rptr.3d 354.

OPINION
RICHLI, J.
C.C., a minor girl (Minor), appeals from the juvenile court's dispositional order granting reunification services to her mother, B.C. (Mother). Despite evidence that Mother's mental illness might make her incapable of reunifying with Minor, the court concluded it had no authority to deny services, because Mother would not submit to a psychological evaluation as required for denial of services under Welfare and Institutions Code section 361.5, subdivision (b)(2).
We conclude a juvenile court has the authority to deny services to a parent who refuses to comply with a valid court order for a psychological evaluation. We reverse the order granting services and remand to give the court and parties an opportunity to determine how they wish to proceed in light of our decision.

I

FACTUAL AND PROCEDURAL

BACKGROUND

A. Dependency Petition and Detention Hearing

Minor was born in January 1999. In March 2002, the Riverside County Department of Public Social Services (DPSS) filed a dependency petition regarding Minor. *484 The petition alleged Mother had inflicted serious physical harm on Minor, causing a nosebleed and a bruise to her forehead; Mother was mentally ill and unable to protect Minor; and Minor's father could not be located and provided no support for Minor. The petition included a police report showing that Mother had been arrested for corporal injury to a child (Pen.Code, § 273d) for causing the injuries to Minor.
DPSS's report for the detention hearing stated that at the time she was arrested Mother was incoherent and unable to be interviewed. A maternal aunt who was at the scene said the family had been trying to get Mother some mental health help for a long time, to no avail. According to the aunt, Mother said things that did not make sense. Mother had been trying to prevent relatives from touching Minor because she thought this would kill Minor. Mother also had been saying that "[t]he demons [were] coming" and that she was trying to protect her daughter. Mother referred to the relatives and to herself as "dead."
The day after the petition was filed, the court ordered Minor removed from Mother's custody. It also authorized a psychological evaluation of Mother, to be confidential, and ordered reunification services and visitation for Mother.

B. Jurisdictional Hearing

The court set a jurisdictional hearing for April 2002. DPSS's report for the hearing stated Mother had been released on bail after her arrest, but had been returned to custody when she failed to appear for a settlement conference in March 2002. When the social worker interviewed Mother at the jail in April 2002, Mother had a "disconnected" look on her face. She stated, "I am tired of these devil games." She also said, "You can't believe anything Breanna says, she is dead." When the social worker asked her who Breanna was, Mother got a disconnected look on her face and said she did not want to talk anymore.
Mother's mother told the social worker that Mother was depressed and acted like she was "schizophrenic." She said Mother was "not in her right state of mind."
The social worker also spoke with Minor's shelter parents. The shelter mother reported that Minor had said, "[M]y mom slapped me." Later, Minor told the social worker, "[M]y mommy does not like me."
The court continued the jurisdictional hearing to May 2002 for receipt of psychological reports. DPSS requested two psychological evaluations of Mother. However, a question arose whether the evaluations could be performed without Mother's agreement.
In May 2002, DPSS requested a further continuance to obtain the results of a psychological examination of Mother. The court again continued the hearing, to June 2002. It also appointed a guardian ad litem for Mother.
DPSS's report for the June jurisdictional hearing recommended Mother receive reunification services. However, DPSS reported Mother was refusing to receive psychological services and had refused to complete psychological evaluations. A doctor had reported that Mother refused to leave her cell and refused to speak with him.
In June 2002, the court set the jurisdictional hearing as a contested matter for July 2002. At the July hearing, the court found true all of the jurisdictional allegations of the petition, including the allegation that Mother suffered from mental health problems which endangered Minor's safety and well-being.

C. Dispositional Hearing

Following the jurisdictional findings, the court conducted a dispositional hearing. *485 It granted custody of Minor to DPSS, for placement in a foster home, relative home, or suitable facility. The court ordered no reunification services to Minor's alleged father, whom DPSS had never been able to locate.
Counsel for Minor argued the court should deny services to Mother as well, pending her participation in a psychological evaluation. All parties had stipulated Mother had continuously refused to submit to an evaluation. Counsel argued that, if a psychological evaluation showed Mother's mental illness made her unable to benefit from reunification services, the court could deny services pursuant to Welfare and Institutions Code section 361.5, subdivision (b)(2) (hereafter section 361.5(b)(2).) Mother should not be allowed to benefit from her refusal to cooperate by receiving services to which she might not be entitled.
Counsel for DPSS stated DPSS wished it could join in counsel for Minor's argument, but it could not because there was no provision in the statutes for denying services to Mother based on her refusal to be evaluated. Therefore, DPSS recommended services be granted to Mother.
The court ruled: "[T]he Court does not feel that it has the jurisdiction to take the leap of finding that mother's failure to comply with the court ordered testing renders her incapable of benefiting from reunification services in this matter.... Although a person has not cooperated in participating in the evaluation where the court ordered such an assessment to be made, the [L]egislature has not given us the tools to jump to the next level from finding that the person is incapable. [¶] ... [¶] ... This is possibly an area where the [Legislature should act and indicate that the Court can make such an inference based on the parent's failure to participate in the examination, but I think lacking the underlying facts for the Court to make a factual finding that 361.5(b)(1) [sic] exists by clear and convincing evidence, I just don't think the court can go there, and therefore, services are offered to the mother."

II

DISCUSSION

A. Denial of Reunification Services Under Section 361.5(b)(2)

Welfare and Institutions Code section 361.5, subdivision (a) provides that whenever a child is removed from a parent's custody, the juvenile court shall order reunification services for the parents "[e]xcept as provided in subdivision (b)...." Subdivision (b) of section 361.5 provides that services need not be provided when the court finds, by clear and convincing evidence, that any of 15 enumerated circumstances is true.
We are concerned in this case with section 361.5(b)(2), which states that services need not be provided where "the parent or guardian is suffering from a mental disability that is described in Chapter 2 (commencing with Section 7820) of Part 4 of Division 12 of the Family Code and that renders him or her incapable of utilizing those services." [1]
*486 Family Code section 7827 is part of the chapter of the Family Code referred to in Welfare and Institutions Code section 361.5(b)(2). Section 7827 provides that a proceeding may be brought, outside of the dependency context, to free a child from parental custody and control where the parent or parents "are mentally disabled and are likely to remain so in the foreseeable future." (§ 7827, subd. (b).) Section 7827 defines "mentally disabled" to mean "that a parent or parents suffer a mental incapacity or disorder that renders the parent or parents unable to care for and control the child adequately." (Id., subd. (a).)
Family Code section 7827, subdivision (c) requires that a finding of mental disability be supported by "the evidence of any two experts," each of whom must be a psychiatrist or psychologist meeting educational and experience requirements. Welfare and Institutions Code section 361.5(b)(2) does not expressly state that it incorporates the requirement of two expert opinions. However, courts have found that it does. (See, e.g., In re Joy M. (2002) 99 Cal.App.4th 11, 18, 120 Cal. Rptr.2d 714; Linda B. v. Superior Court (2001) 92 Cal.App.4th 150, 152-153, 111 Cal.Rptr.2d 559; Curtis F. v. Superior Court (2000) 80 Cal.App.4th 470, 474, 95 Cal.Rptr.2d 232.)
Thus it can be seen that Mother's refusal to submit to a psychological evaluation placed the court in an untenable position: it could not, without evaluations from two experts, find Mother was suffering from a mental disability as described in Family Code section 7827, subdivision (c). Therefore, it could not, under Welfare and Institutions Code section 361.5(b)(2), find she was incapable of utilizing reunification services and deny services to her on that basis. The court accordingly believed it was bound to offer services to Mother, notwithstanding the evidence suggesting denial of services Under section 361.5(b)(2) might be shown to be appropriate if a psychological evaluation were obtained.

B. Disentitlement Doctrine

In MacPherson v. MacPherson (1939) 13 Cal.2d 271, 89 P.2d 382, a father removed his children from California to Mexico in violation of a divorce decree. His former wife obtained a judgment requiring him to pay her attorney fees and costs incurred in trying to locate the children. The Supreme Court held the father's violation of the divorce decree precluded him from appealing from the judgment awarding fees and costs, stating: "A party to an action cannot, with right or reason, ask the aid and assistance of a court in hearing his demands while he stands in an attitude of contempt to legal orders and processes of the courts of this state. [Citations.]" (Id, at p. 277, 89 P.2d 382.)
The principle that a court may refuse assistance to a party who fails to comply with a court order has been applied in a dependency proceeding. In In re Kamelia S. (2000) 82 Cal.App.4th 1224, 98 Cal. Rptr.2d 816, a father absconded with his daughter, a dependent child whom the juvenile court had placed in a foster home. Citing MacPherson v. MacPherson, supra, 13 Cal.2d 271, 89 P.2d 382, the court held the father was barred by the "doctrine of disentitlement" from appealing from the placement order. It found the father's conduct undermined and frustrated "the entire purpose of the dependency law" by making it virtually impossible for the court *487 to extend its protection to the child at a completely unknown location. The father was "entirely responsible for paralyzing the court's ability to implement the procedures intended to benefit the interests of the dependent minor." (In re Kamelia S. at p. 1229, 98 Cal.Rptr.2d 816.) The court further held the father was precluded from seeking the assistance of the court even though he had not initiated the dependency proceeding which led to the order he violated. (Id. at pp. 1228-1229, 98 Cal. Rptr.2d 816; see also In re Guardianship of Melissa W. (2002) 96 Cal.App.4th 1293, 1299, 118 Cal.Rptr.2d 42 [grandparents could not appeal from denial of their guardianship petition where they had caused minor to be removed to Bahamas in violation of court order]; Adoption of Jacob C. (1994) 25 Cal.App.4th 617, 623-624, 30 Cal.Rptr.2d 591 [disentitlement doctrine barred mother who had abducted child from contesting stepmother's petition to terminate mother's parental rights to other child].)
Although the above decisions involved abduction of children, the principle they articulate extends to other kinds of conduct. In particular, it extends to conduct which, as in this case, frustrates the ability of another party to obtain information it needs to protect its own legal rights. In TMS, Inc. v. Aihara (1999) 71 Cal.App.4th 377, 83 Cal.Rptr.2d 834, judgment debtors refused to comply with a court order to answer postjudgment interrogatories designed to secure information to aid in enforcement of the money judgment against them. The court dismissed their appeal from the judgment, holding it had the inherent power to do so without a judgment of contempt. (Id, at pp. 379-380, 83 Cal. Rptr.2d 834.)
Mother's refusal to participate in a psychological evaluation in this case is comparable to the conduct of the parties in the above cases, which was held to bar their right to seek the assistance of the courts. Mother's conduct makes it impossible for the court to perform its obligation to determine, pursuant to section 361.5(b)(2), whether her mental disability renders her incapable of utilizing reunification services. Mother's conduct also interferes with the legal rights of Minor. If Mother is, in fact, incapable of utilizing services, Minor is entitled to have her case proceed to the permanency planning stage without the delay of 12 months or more that must be afforded if reunification services are provided to Mother. (See Welf. & Inst.Code, § 361.5, subds. (a)(1), (f).) "While this may not seem a long period of time to an adult, it can be a lifetime to a young child." (In re Marilyn H. (1993) 5 Cal.4th 295, 310, 19 Cal.Rptr.2d 544, 851 P.2d 826.) Mother, like the offending father in Kamelia S., is "entirely responsible for paralyzing the court's ability to implement the procedures intended to benefit the interests of the dependent minor." (In re Kamelia S., supra, 82 Cal.App.4th at p. 1229, 98 Cal.Rptr.2d 816.)
The Legislature could not have intended this result when it enacted section 361.5(b)(2). The requirement of two expert evaluations incorporated into that provision implicitly assumes a cooperative parent who will submit to the evaluations. Where, as here, the parent is not cooperative, a court has the inherent power under the disentitlement doctrine to bar that parent from seeking further assistance from the court, including the provision of reunification services. The Legislature could not have intended otherwise.
Application of the disentitlement doctrine is particularly appropriate in the context of reunification services. "Reunification services are a benefit, and there is no constitutional `entitlement' to these services." (In re Joshua M. (1998) 66 Cal. *488 App.4th 458, 476, 78 Cal.Rptr.2d 110.) If, as the decisions discussed above hold, a party can be precluded by its contumacious conduct from exercising its statutory right of appeal, the rule of preclusion should apply equally to Mother's right under Welfare and Institutions Code section 361.5, subdivision (a) to receive reunification services. Mother should not be permitted to create a classic Catch 22[2] situation in which the court must extend her services because it cannot determine whether, in fact, she is actually entitled to them.

C. Remedy

The remaining question is the appropriate remedy for Mother's refusal to submit to a psychological evaluation. We have concluded that a remand is necessary. Although the record reflects that the court at the detention hearing "authorized" a psychological evaluation of Mother, it does not appear the court ever ordered Mother to undergo an evaluation. Absent such an order, the disentitlement doctrine would not apply.
Moreover, a court has no authority to order a psychological evaluation of a parent until it has exercised dependency jurisdiction. "Only after a finding the child is at risk, and assumption of jurisdiction over the child, do a parent's liberty and privacy interests yield to the demonstrated need of child protection. At that stage, where the aim is to reunify parent and child, expert opinion on the cause and extent of mental illness may be required to ascertain which services will eliminate the conditions leading to dependency." (Laurie S. v. Superior Court (1994) 26 Cal.App.4th 195, 202-203, 31 Cal.Rptr.2d 506.) In contrast, "[frequently after a finding of jurisdiction a parent may be ordered to undergo an evaluation to determine if the parent is mentally disabled and if reunification services are likely to prevent continued abuse and neglect. [Citation.] Similarly, where the child is declared a dependent because of parental mental illness, the parent may subsequently be evaluated to determine if the parent is incapable of utilizing reunification services. [Citations.]" (Id. at p. 201, 31 Cal. Rptr.2d 506.)
Thus, the court could not validly order a psychological evaluation until it found jurisdiction, and Mother's refusal to submit to an evaluation up to that point would not justify denying her services under the disentitlement doctrine. Now that the court has found jurisdiction and declared Minor a dependent, however, it has the authority to order an evaluation, and Mother's failure to comply with the order would provide a valid basis for denying services. Since Mother has not had an opportunity to consider whether to comply with a valid order for an evaluation, a remand is necessary to afford her that opportunity. The court on remand therefore should (1) determine whether an evaluation should be ordered; (2) if so, give Mother a reasonable opportunity to comply with the order; (3) if Mother submits to an evaluation, determine on the basis of the evaluation whether to afford or deny her reunification services under section 361.5(b)(2); and (4) if Mother refuses to submit, determine whether to deny her services based on her noncompliance with the court's order.

III

DISPOSITION
The order of reunification services for Mother is reversed. The matter is remanded *489 to the juvenile court for proceedings in accordance with this opinion.
We concur: HOLLENHORST, Acting P.J., and GAUT, J.
NOTES
[1] We note in passing that subdivision (b)(6) of section 361.5 provides that services may be denied where "the child has been adjudicated a dependent pursuant to any subdivision of Section 300 as a result of ... the infliction of severe physical harm to the child ... by a parent ... and the court makes a factual finding that it would not benefit the child to pursue reunification services with the offending parent...." The court in this case adjudicated Minor a dependent based in part on its finding that Minor suffered serious physical harm inflicted by Mother. However, the possibility of denying reunification services under section 361.5, subdivision (b)(6) was not addressed by the parties or the court, so we will express no opinion on the issue.
[2] Heller, Catch 22 (1961).