Filed 5/20/22  P. v. Chiriac CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E078082 |
| v. | (Super.Ct.No. RIF138126) |
| EMANUEL CHIRIAC, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge.  Affirmed.

Ava R. Stralla, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Defendant and appellant Emanuel Chiriac appeals from the trial court's denial of his motion to vacate the judgment and set aside his plea.  For the reasons forth *post*, we affirm the trial court's order denying defendant's motion.

## STATEMENT OF THE CASE

On July 27, 2009, an amended information charged defendant with three counts of lewd and lascivious acts upon a child under 14 (Jane Doe) by use of force, violence, duress, menace and fear under Penal Code[1] section 288, subdivision (b)(1) (counts 1-3). The information also alleged that counts 1 and 2 occurred on or about May 2006, and count 3 occurred "on or about the year of 2006."

On November 5, 2009, as to count 1, a jury found defendant guilty of violating section 288, subdivision (a), a lesser included offense of section 288, subdivision (b)(1). The court declared a mistrial on its own motion as to counts 2 and 3. After the court and counsel conferred regarding a section 288.1 referral, the court appointed Dr. Robert Suiter to examine defendant and to provide a report. The court also ordered both defense counsel and the prosecutor to submit simultaneous sentencing memorandums. The court then ordered a Romanian interpreter for defendant's next appearance, exonerated the current bail bond, and remanded defendant to custody.

On May 5, 2010, reports by the probation department and Dr. Suiter were filed. Moreover, a section 1203.03 diagnostic study/recommendation was also filed. At the hearing on May 5, 2010, the court stated that it had read and considered the probation report, the court-ordered evaluations, and the sentencing briefs. After Doe and others addressed the court, the court granted defendant formal probation for 60 months under various terms and conditions.

---

[1] All further statutory references are to the Penal Code unless otherwise specified

On the day of retrial on March 16, 2011, as to counts 2 and 3, the trial court granted the prosecutor's oral motion to add counts 4 and 5—violations of section 288, subdivision (a). Defendant then entered a guilty plea as to those counts. The court granted formal probation for a period of 60 months under various terms and conditions, including that defendant not leave California without first obtaining written permission from his probation officer. Defendant accepted the terms and conditions of his probation. The court then dismissed counts 2 and 3 in the interest of justice under section 1385, and exonerated the current bail bond.

On November 7, 2013, the probation department filed a violation of probation against defendant. The department alleged the following violations to the terms of probation: (1) on October 9, 2013, defendant was discharged from his sex offender treatment program for excessive absences, a violation of term 7; (2) defendant failed to report to the kiosk reporting system for the month of September, a violation of term 10; and (3) defendant failed to contact his probation officer, even after the probation officer sent defendant a letter and left a note at defendant's front door, a violation of term 10. The probation officer stated that these violations were defendant's first violations of probation. If the court sustained the probation violations, the officer recommended that defendant be sentenced to state prison.

At the probation violation hearing on November 18, 2013, defendant failed to appear. The court stated, "Not here? Bond forfeited. Bench warrant at [$]50,000." The court never mentioned revoking defendant's probation.

On April 16, 2014, in case No. RIF1401741, the People filed a complaint alleging that defendant failed to reregister as a sex offender after he moved out of his residence, under section 290.013, subdivision (a). The complaint also alleged two strike priors. On May 6, 2014, the trial court issued a warrant for one million dollars in the case. The warrant appeared to be outstanding and the case appeared to be active. However, there were no future court dates on the case.

On April 2, 2021, defense counsel filed a motion to vacate conviction/sentence under section 1473.7.

On May 17, 2021, defendant was not present under section 977, and the court granted a stipulated motion to continue the hearing under section 1050, subdivision (d).

On June 22, 2021, the People filed an opposition to defendant's motion to withdraw his guilty plea under section 1473.7.

On June 30, 2021, the court found good cause to continue the case to August 2, 2021. The court ordered Doe to return and for defendant to be present at the next date. The court then stated that defendant's section 977 appearance was not authorized by the court, and the bench warrant remained outstanding.

On August 2, 2021, the trial court indicated that it had read and considered defendant's declaration and granted a motion to continue. The bench warrant remained outstanding.

On November 2, 2021, the trial court filed defendant's brief supplementing his motion to vacate his past convictions and to set aside his guilty plea under section 1473.7. The court denied defendant's motion and the bench warrant remained outstanding.

4

On November 12, 2021, defendant filed a notice of appeal from the court's denial of his motion under section 1473.7. The court denied defendant's request for a certificate of probable cause.

**STATEMENT OF FACTS**

In a motion filed on April 2, 2021, defendant moved to vacate the 2009 guilty verdict (count 1) and his 2011 guilty plea (counts 4 & 5). Defendant noted that section 1473.7 provided people who are no longer in criminal custody with an opportunity to raise a claim of legal invalidity based on actual innocence or a defendant's failure to meaningfully understand, defend against, or knowingly accept the immigration consequences of his plea.

Defendant indicated that he is a Romanian citizen and a permanent legal resident of the United States. He left the United States in 2013 because of death threats he and his wife received from Doe's father (Father). In 2014 Father murdered Father's wife, tried to kill another person, and then committed suicide. Doe is now 28 years old and has since recanted her allegations against defendant.

Moreover, defendant argued that since he is a noncitizen, (1) he "suffers all of the adverse immigration consequences of deportation, exclusion from admission to the United States, or denial of . . . naturalization;" (2) he is deportable under the Immigration and Nationality Act because of his convictions and he is certain to face immigration consequences as sexual abuse of a minor is an aggravated felony regardless of the sentence. (8 USC § 101, subd. (a)(43)(A).)

5

Defendant additionally provided that the Board of Immigration Appeals has considered intentional sexual conduct by an adult with a child is a crime of moral turpitude. And a conviction under section 288 constitutes a crime for violence for purposes of unlawful reentry under the United States Sentencing Guidelines Manual § 2L1.2, even though the offense does not have force as an element of the crime.

Furthermore, defendant stated that he is ineligible for immigration relief or asylum because of his convictions.

A document attached to the motion included defendant's declaration dated March 30, 2021, translated from Romanian, which stated:

"1.     My name is Emanuel Chiriac. I am the defendant in the herein action. All of the facts herein alleged are within my own personal knowledge and, if called upon as a witness, I could competently testify thereto.

"2.     My country of citizenship is Romania.

"3.     I am married to my wife, Claudia Chiriac, a United States citizen, and we have four United States citizen children.

"4.     I am a legal permanent residence of the United States. I left the United States in 2013 due to death threats my wife and I suffered from . . . the father of the only alleged victim in this case.

"5.     In 2014, [Father] murdered his wife . . . and also tried to kill another person before committing suicide.

"6. [Doe], the alleged victim on this case, is now 28 years old and has since recanted her allegations.

"7. In 2007, a felony complaint was filed against me. The complaint alleged three counts of Penal Code section 288(b)(1) and one count of Penal Code section 288(a)[], crimes that I allegedly committed in May 2006. An amended information was filed on July 27, 2007[,] alleging three counts of Penal Code section 288(b)(1).

"8. I denied all allegations and charges and I took my case to trial. On or around July 5, 2007, I was found guilty by a jury on count one and hung on counts two and three. On March 16, 2011, I pled to amended counts four and five, violations of Penal Code section 288(a), Lewd or lascivious act [on] a child who is under the age of 14 years. I was sentenced to 365 days in county jail [and to] five years formal probation.

"9. My convictions should be dismissed because I was convicted for crimes I did not commit.

"10. The victim on this case. [Doe] has recanted her statement and states that all of the allegations pertaining to my case were made up.

"11. Because of the made-up allegations, I suffered criminal convictions which are causing severe immigration consequences. I am deportable, inadmissible, and ineligible for naturalization because of my convictions.

"12. I respectfully request the Court vacate my convictions because I am not guilty of the accusations and the resulting convictions.

"I declare under penalty of perjury under the laws of the [State of] California that the foregoing is true and correct. Executed on 3/30/2021. [Signed Emanuel Chiriac]"

The motion also attached (1) articles regarding Father killing Father's wife, shooting another individual, and committing suicide; and (2) an undated handwritten letter from Doe wherein she recanted her accusations against defendant.

In the People's opposition to defendant's motion, the People argued that when defendant entered his plea, he signed a felony advisement of rights form, which included that defendant understood the immigration consequences pursuant to his plea. Defendant attested that he entered his plea knowingly, voluntarily and with the advice of counsel. Notwithstanding, 10 years later, defendant contends that "he has new evidence of actual innocence and that he is likely to have future immigration consequences of his plea."

The People, in its opposition, pointed out that defendant failed (1) to explain why he did not file his section 1473.7 motion until four years after the statute was created; (2) to explain why it took him 10 years to attempt to vacate his plea; (3) to show "his attorney did not thoroughly advise him at the time" of the immigration consequences of his plea; and (4) to show "he did not understand the future immigration implications through the conviction at trial or his voluntary plea to the charges."

The People went on to argue that although defendant was alleging new evidence after 14 years, the issue that Father had forced her to falsely accuse defendant of molesting her was defendant's defense at trial. It is not new evidence that fundamentally undermines the judgment. Moreover, defendant must show " 'the evidence of innocence could not have been, and presently cannot be, refused.' "

Based on the foregoing, the prosecutor urged the court to deny defendant's section 1473.7 motion to vacate his guilty plea based upon (1) his warrant status; (2) he had not

met his burden to show that he was not advised of the consequences of his plea, that he was prejudiced as a result, and that he did not enter his guilty plea knowingly and voluntarily; and (3) there was no new evidence presented by defendant that was not litigated in the first trial.

Thereafter, the court filed defendant's declaration, dated July 30, 2021, which stated:

"In accordance with the laws of California, I Emanuel Chiriac, hereby declare:

"1.     My name is Emanuel Chiriac.  I am the defendant in the herein action.  All of the facts herein alleged are within my own personal knowledge and, if called upon as a witness, I could competently testify thereto.

"2.     I am not able to travel back into the United States due to the Covid-19 restrictions that have been set on the United Kingdom (England).

"3.     As of July 19, 2021, 'The CDC has issued a Level 4 Travel Health Notice for the United Kingdom due to Covid-19.'  This would make traveling between both nations extremely difficult.

"4.     I am unable to travel into the United States due to problems with immigration as well.

"5.     This is due to the warrant for my arrest.

"6.     The warrant for my arrest would mean that I will be detained by immigration the minute I step onto US soil.  If detained I will most definitely not be allowed to leave custody to go to court.

9

"7.     Once the warrant has been lifted, I will be able to fix the restrictions on my green card and I will be able to immediately re-enter into the United States.

"8.     I also cannot fly because of the restrictions that have been placed on my green card.

"I declare under penalty of perjury under the laws of California that the foregoing is true and correct.  Executed this on July 30th 2021."  The declaration was signed by defendant and notarized.

On September 9, 2021, the trial court granted a continuance under section 1050, and indicated that no further continuances would be granted.  The bench warrant remained outstanding.

On the date of the hearing, November 2, 2021, the trial court allowed defendant to file another brief in support of his motion.  Defendant argued that his trial counsel "failed to take any steps to defend against the immigration consequences associated with" the offense for which he was on trial.  Therefore, defendant "failed to intelligently assess the severity of the immigration consequences he would suffer."  Because defendant did not receive the required advisements, defendant currently "faces dire immigration consequences."  He "was denied asylum in 2000."  Moreover, because of the convictions, he is barred from applying "for an adjustment of immigration status" through his U.S. citizen wife.

Defendant reiterated his argument that because his probation had been revoked, he fell within section 1473.7 as the statute "fails to clarify whether a person [whose]

10

probation has been revoked is considered in or out of custody." Defendant asked the court to consider this issue.

Moreover, defendant argued that Doe's recantation was newly discovered evidence of his actual innocence and "additional inquiry is necessary to determine" whether the system failed.

At the hearing, defense counsel orally repeated the positions stated in defendant's moving papers and brief. The prosecutor submitted on the record.

The trial court initially noted that section 1473.7 is limited to an individual no longer in criminal custody; and that a petition for writ of habeas corpus is the traditional route wherein a person in custody challenges a conviction. The court stated, "Physical custody is not required for a person to be constrained under restraint, and a person on probation is in constructive custody and under restraint." (Citing *People v. Cruz-Lopez* (2018) 27 Cal.App.5th 212, 220-221.) The court noted, "A person on probation is in custody because he or she is subject to restraints not shared by the public generally and may lose his liberty and be eventually incarcerated." (Citing *People v. Villa* (2009) 45 Cal.4th 1063, 1070.) The court then added that "Section 1473.7 is not applicable to a person under probation at the time the motion is presented." (Citing *Cruz-Lopez*, at p. 221.)

The court then stated: "In this case, the defendant is still considered to be under constructive custody. He is on probation. Probation has been revoked for alleged violations of a bench warrant and a bench warrant has issued and he will potentially be sentenced to prison for violating probation. It is clear the defendant is subject to

11

restraints not shared by the public generally and may lose his liberty and be eventually incarcerated within the meaning of [*People v. Villa*, *supra*, 45 Cal.4th at p. 1070]."[2]

Although the court indicated that it could summarily deny defendant's motion based on the ground that section 1473.7 was not applicable, the court added that there were additional grounds for denying defendant's motion:  "The Fugitive Disentitlement Doctrine gives a court discretion to dismiss an appeal by a defendant who is a fugitive from justice."  (Citing *Polanski v. Superior Court* (2009) 180 Cal.App.4th 507, 531 (*Polanski*).)  The court described the "long-existing doctrine" as follows:

"A party to an action cannot with right or reason ask the aid and assistance of a Court in hearing his demands while he stands in an attitude of contempt to legal orders and processes of the courts of this state.  [(*MacPherson v. MacPherson* (1939) 13 Cal.2d 271, 277.)]  [¶]  Courts have said that such a defendant forfeits the right to invoke the jurisdiction of the courts to review a judgment that the fugitive flouts and puts himself rather than the courts in a [position] of determining whether to submit to the court's judgment."  (Citing *Polanski*, *supra*, 180 Cal.App.4th at p. 532.)

The court noted the Fugitive Disentitlement Doctrine encourages individuals to surrender voluntary which "promotes the efficient dignified operation of the courts, [*Degen v. U.S.* (1996) 517 U.S. 820, 824].  The trial court noted that although *Polanski* dealt with an appeal, "the logic and purpose of the doctrine does apply" to a section

---

[2] As noted by appellate counsel and in our procedural background *ante*, on November 18, 2013, the reporter's transcript indicated that the court stated defendant's bond was forfeited and issued a bench warrant.  There is no record that the court revoked defendant's probation.

1473.7 motion, and that courts should balance concerns when determining whether the application of the doctrine "is a proper sanction for a party's flight." (Citing *Polanski*, *supra*, 180 Cal.App.4th p. 533.)

The trial court observed that in choosing whether the doctrine applies, it had to consider whether defendant was seeking relief while insulating himself from an unfavorable legal result; whether application of the doctrine would encourage voluntary surrender; whether defendant sought to gain a tactical advantage by fleeing the jurisdiction; how long defendant waited to raise his claim; "and prejudice as a result of his delay and the existence of legal alternatives to flight." (Citing *Polanski*, *supra*, 180 Cal.App.4th at pp. 538-547.)

Recognizing that its application of the doctrine is reviewed for abuse of discretion under *Polanski*, the court stated, "this case calls out for" its application: "The defendant has been at large for years. The only reasonable conclusion that I draw from the case in total, even given all the assertions by the defendant in his declarations—the only reasonable conclusion is that he did flee the jurisdiction. [¶] He has been in violation of his probation since 2013. He is seeking relief from the courts while insulating himself from the consequences of an unfavorable result by staying in another country because he would be arrested should he try to cross the border into the United States. The application of the Fugitive Disentitlement Doctrine does encourage, in this case, voluntary surrender. It does have a deterrent effect. If the defendant is required to submit to the court's authority to obtain a relief, he is more likely to bring himself before

the court, and this would have a deterrent effect on defendants who believe they can abscond and raise and litigate claims of innocence from abroad."

"Other than encourage and surrender, the Court has little to no ability to protect its own dignity from the defendant who has denied this court. The defendant has certainly gained a [tactical] advantage by fleeing and remaining free from custody despite the fact that the court has issued a bench warrant for his arrest and in delaying adjudication from his probation violation. With respect to the timing of the raising of the claim, because the defendant has failed to explain his delay, the court is unable to evaluate how long he waited to raise this claim.

"This case is alarmingly close to the fact pattern in Polanski. Given the entire analysis, A, I do not believe the defendant is entitled to have this matter reviewed because he is still under the jurisdiction of the court, and so he is not entitled pursuant to [1473.7]. Furthermore, as I have already stated, I will not conduct a—a new trial analysis for him without him being personally present. The motion pursuant to 1473.7 is denied. The bench warrants will remain outstanding."

## DISCUSSION

After defendant appealed, and upon his request, this court appointed counsel to represent him. Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738 setting forth a statement of the case, a summary of the facts, and potential arguable issues, and has requested this court to undertake a review of the entire record. Pursuant to *Anders*, counsel identified the following issues to assist the court in its search of the record for error:

14

(1)     "Did the court properly deny [defendant]'s section 1473.7 motion based on its finding the statute did not apply to [defendant] because he was in constructive custody as he remained on probation?"

(2)     "Did the court abuse its discretion by denying [defendant]'s section 1473.7 motion by applying the Fugitive Disentitlement Doctrine by finding that [defendant] sought 'relief from the courts while insulating himself from the consequences of an unfavorable result by staying in another country because he would be arrested should he try to cross the border into the United States, as he had fled the jurisdiction'?"

We offered defendant an opportunity to file a personal supplemental brief, and he has not done so.

Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have independently reviewed the record for potential error.  We are satisfied that defendant's attorney has fully complied with the responsibilities of counsel and no arguable issue exists.  (*Id.* at p. 126; *People v. Wende*, *supra*, 25 Cal.3d at pp. 441-442.)

## DISPOSITION

The trial court's denial of defendant's motion is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____
                                                                          J.

We concur:

McKINSTER _____
                Acting P. J.

CODRINGTON _____
                          J.

15