[No. B151211. Second Dist., Div. Three. Mar. 19, 2002.]

Guardianship of MELISSA W., a Minor.
FRAN W. et al., Petitioners and Appellants, v.
TERRY W., Objector and Respondent.

**COUNSEL**

Melodye S. Hannes and Richard A. Marcus for Petitioners and Appellants.

Freda D. Pechner for Objector and Respondent.

**OPINION**

**ALDRICH, J.—**

### INTRODUCTION

Grandparents petitioned for guardianship of their minor granddaughter, Melissa. Following trial, the court found Melissa's father to be a fit parent, denied grandparents' petition, and ordered the child returned to father "forthwith." At grandparents' request, the trial court briefly stayed the relocation to enable the child to finish the school year. Grandparents filed their appeal, but before returning the child to her father, the grandparents' counsel accompanied 16-year-old Melissa to the Bahamas where the child was purportedly married with grandparents' consent.[1] Once father learned of the marriage, he moved this court for dismissal of the appeal.

---

[1] The issue before us is whether the appeal is subject to dismissal due to the conduct of grandparents and their counsel. We do not pass on the validity of the purported marriage,

The circumstances of this case require imposition of the ultimate sanction of dismissal of the appeal. Grandparents may not obtain review of the judgment while at the same time being in violation of the very judgment from which they appeal. Additionally, the conduct of grandparents and counsel in arranging Melissa's emancipation by way of the purported marriage has rendered moot the issue of guardianship. For these reasons, we grant father's motion and dismiss this appeal. We also impose monetary sanctions against grandparents' counsel for continuing to prosecute the appeal after it became moot by reason of Melissa's marriage.

### Summary of Facts and Proceedings

On March 28, 1997, Cheryle, Melissa's mother, died. She was survived by her husband, Terry (father) and their two daughters, then 11-year-old Melissa and 10-year-old Courtney. The family was residing in Los Angeles. Appellants are the decedent's parents and Melissa's grandparents, Fran and Arthur W. (grandparents). Father later relocated to Placerville but allowed his daughters to live with grandparents in Los Angeles to finish the school year. On July 23, 1999, grandparents filed a petition for guardianship of the minors. Eventually, Courtney returned to her father's custody.

On June 12, 2001, after three days of trial of the petition for guardianship of Melissa, the trial court issued a judgment denying the petition. The trial court specifically found, inter alia, that father is a fit and proper parent to his children; he has the ability to provide for their needs; it is in Melissa's best interest to be returned to her father's custody; and there is no basis for the trial court to interfere with the constitutionally protected fundamental right of father to parent his children. The trial court then ordered that Melissa "shall be returned to the custody of Respondent-Father, *forthwith.*" (Italics added.) At their request for time to allow Melissa to finish the school year and grandparents to appeal, the trial court granted grandparents a brief stay of the judgment to July 7, 2001.

On June 27, 2001, grandparents filed their notice of appeal from the judgment denying the guardianship petition.

That same day, grandparents executed purported consent forms, granting their permission for Melissa, then age 16, to marry 19-year-old Austin H. On the consent forms, grandparents indicated they were consenting *as Melissa's legal guardians,* despite the fact the June 12, 2001, judgment

---

which question is currently pending before the El Dorado Superior Court in father's annulment proceeding.

unambiguously denied grandparents' guardianship petition.[2] This purported consent was written on the letterhead of grandparents' counsel, Melodye S. Hannes.

On June 28, 2001, Melissa arrived in the Bahamas accompanied by Attorney Hannes.

Meanwhile, grandparents concurrently moved the trial court for a stay of the judgment pending appeal on the ground Melissa would suffer detriment if she were to reside with father during that time. In seeking that stay, grandparents failed to disclose to the trial court Melissa's imminent nuptials.

On June 29, 2001, grandparents filed a petition for writ of supersedeas in this court seeking a stay of the order directing Melissa's return to father, reiterating the grounds raised in the lower court, and likewise omitting any mention of the planned wedding.

On July 2, 2001, Melissa was purportedly married to Austin H. in the Bahamas. Attorney Hannes executed a Bahamian "Certificate by Parents or Guardian of Consent to Marriage by a Minor," indicating grandparents' consent to the marriage. In helping to secure the marriage in the Bahamas, counsel apparently did not disclose to the Bahamian Registrar General the June 12, 2001 judgment denying the guardianship petition.[3] The marriage was solemnized in the presence of Hannes as one of the witnesses.

On July 7, 2001, Melissa returned to her father in Placerville, where she remained until month's end.

---

[2]Any claimed reliance by grandparents on a pretrial order granting temporary guardianship was unsupported. By way of background, on March 14, 2001, the trial court ordered temporary guardianship of Melissa to grandparents, pendente lite, to continue until May 21, 2001. Apparently, no letters of guardianship were issued. Father sought a writ of mandate in this court challenging the temporary guardianship. On April 12, 2001, in response to father's petition, this court issued a stay of all proceedings except for trial of the guardianship petition. This stay had the effect of placing guardianship in abeyance pending trial. Thus, after May 21, 2001, grandparents were no longer Melissa's temporary guardians. Moreover, irrespective of any claimed status as *temporary guardians* of Melissa prior to trial, grandparents clearly lacked authority after the adverse judgment to consent to Melissa's marriage, and counsel should have been aware of that fact.

[3]We note that Hannes asserts she in fact supplied a copy of the judgment to the Bahamian Registrar General. However, in an exhibit attached to father's motion to dismiss the appeal, which exhibit was received without objection, the Director of Legal Affairs of the Office of the Attorney General of the Commonwealth of the Bahamas (the Director) opined the Bahamian Registrar General properly accepted grandparents' consent "as he was not in possession of the judgment."

The Director explained application would have to be made to the Bahamian Supreme Court to have the marriage declared void on the ground consent was not validly given. Similarly, California law requires written consent of parents or guardians in order for a minor to marry. (Fam. Code, § 302.)

On July 19, 2001, grandparents filed a request in this court for an immediate stay of the judgment pending appeal. On July 25, 2001, this court summarily denied the petition for writ of supersedeas and request for stay.

On July 30, 2001, father first learned of his daughter's Bahamian marriage when he found a note in his mailbox signed "Melissa H.," Austin's surname. Father moved for a dismissal of grandparents' appeal, arguing the purported marriage had the effect of emancipating Melissa so as to render the appeal moot; grandparents' defiance of the judgment denying the guardianship petition precluded them from seeking review of that judgment; and grandparents' failure to voluntarily dismiss the appeal upon the marriage warranted the imposition of sanctions.

We issued an order to show cause why the appeal should not be dismissed, specially set the matter, and heard oral argument.

## DISCUSSION

1. *Effect of grandparents' defiance of judgment on their right to appeal.*

Grandparents were promptly bound by the June 12, 2001, judgment denying their petition for guardianship, absent an applicable stay. (Code Civ. Proc., § 917.7.[4])[5] As indicated, the judgment included a provision for a brief stay to July 7, 2001, but only of "the order to return Melissa" to her father. The purpose of staying relocation for a month was to enable Melissa to finish the school year. The court did not stay its order denying the guardianship petition and did not stay its order confirming custody in the father "*forthwith.*" (Italics added.) The trial court's unambiguous denial of the guardianship petition was immediately effective and binding upon the parties. (Code Civ. Proc., § 917.7.) Because father retained legal custody, grandparents had no authority to consent as guardians to Melissa's marriage. Likewise, their counsel undermined the June 12, 2001, judgment by accompanying Melissa to the Bahamas and participating in procuring a marriage

---

[4]Code of Civil Procedure section 917.7 states, "The perfecting of an appeal shall not stay proceedings as to those provisions of a judgment or order which award, change, or otherwise affect the custody, including the right of visitation, of a minor child in any civil action . . . . However, the trial court may in its discretion stay execution of these provisions pending review on appeal or for any other period or periods that it may deem appropriate. . . ."

[5]Grandparents contend because the trial court stayed the judgment, they had a good faith legal argument that they were Melissa's legal guardians at the time they executed the consent forms. However, as explained in footnote 2, *ante*, at the time of trial grandparents were no longer Melissa's temporary guardians. Therefore, the stay of the judgment to July 7, 2001 did not have the effect of reviving or extending guardianship status to grandparents during the period of the stay.

designed to alter the child's legal status.[6] In doing so, grandparents and counsel thwarted the very judgment of which they now seek review. "It is illogical and inequitable for appellant[s] to seek appellate review of the very orders [they have] blatantly violated." (*In re Kamelia S.* (2000) 82 Cal.App.4th 1224, 1227 [98 Cal.Rptr.2d 816].)

 "It is well settled that this court has the inherent power to dismiss an appeal by any party who has refused to comply with the orders of the trial court. [Citations.]" (*TMS, Inc. v. Aihara* (1999) 71 Cal.App.4th 377, 379 [83 Cal.Rptr.2d 834].) "A party to an action cannot, with right or reason, ask the aid and assistance of a court in hearing his demands while he stands in an attitude of contempt to legal orders and processes of the courts of this state. [Citations.]" (*MacPherson v. MacPherson* (1939) 13 Cal.2d 271, 277 [89 P.2d 382].)

A formal judgment of contempt is not a prerequisite to exercising our power to dismiss. (*Alioto Fish Co. v. Alioto* (1994) 27 Cal.App.4th 1669, 1683 [34 Cal.Rptr.2d 244].) The power to dismiss " 'applies to wilful disobedience or obstructive tactics without such an adjudication.' [Citations.]" (*Ibid.*)

The power to dismiss an appeal for violation of a court order has been exercised in the child dependency context. In *Kamelia S.*, the child was ordered placed in foster care. The father appealed from that order, and while the appeal was pending, he took the law into his own hands and absconded with the minor. (*In re Kamelia S., supra,* 82 Cal.App.4th at pp. 1225-1226.) The father's appeal was dismissed on the ground that appellant was not entitled to obtain review of the juvenile court's order while at the same time being in contempt of the very order from which he appealed. (*Ibid.*)

 These authorities compel the conclusion that by undermining the trial court's judgment, grandparents and counsel have forfeited their right to prosecute this appeal. Grandparents lacked authority to consent to Melissa's marriage. Nonetheless, they and counsel helped arrange the Bahamian marriage to emancipate Melissa for the purpose of negating the effect of the judgment confirming custody in father. Their obstructive tactics call for the exercise of this court's inherent power to impose the ultimate sanction of dismissal.

---

[6]Counsel contend they did nothing more than fulfill their obligation to advise their clients, grandparents and Melissa, of their legal options. However, there is a great difference between an attorney's advising a client of his or her legal options and the consequences thereof, and affirmative conduct taken to frustrate a valid judgment not to one's liking by accompanying a child to a foreign jurisdiction for the purpose of entering into a questionable marriage.

2. *Effect of Melissa's purported marriage on continued existence of controversy to be resolved on appeal.*

As an additional and independent ground for dismissing this appeal, it appears the matter has been rendered moot by Melissa's purported marriage. The appeal was taken from the judgment denying grandparents' petition for guardianship of Melissa. Grandparents continue to insist the marriage is valid. If, as grandparents contend, Melissa is validly married, she is currently emancipated by operation of law (Fam. Code, § 7002, subd. (a)) and no longer requires the protection of the guardianship grandparents seek. (*In re Katherine R.* (1970) 6 Cal.App.3d 354, 357 [86 Cal.Rptr. 281].) The conduct of grandparents and their counsel in helping to arrange the marriage has mooted the issue of guardianship. In view of Melissa's present status as an emancipated minor, review and reversal of the judgment denying guardianship would be an idle act because this court cannot afford grandparents any effective relief from that judgment. Therefore, the appeal is also dismissed on the ground of mootness.

3. *Sanctions for frivolous appeal.*

Father requests monetary sanctions for grandparents' prosecution of a frivolous appeal.

"[A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit. [Citation.]" (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179], italics added.)

Having reviewed the record, we conclude that under either an objective standard (see, e.g., *Maple Properties v. Harris* (1984) 158 Cal.App.3d 997, 1008-1009 [205 Cal.Rptr. 532] [sanctions imposed because appeal indisputably lacked merit]), or a subjective standard (see, e.g., *In re Marriage of Stich* (1985) 169 Cal.App.3d 64, 77 [169 Cal.Rptr. 919] [sanctions imposed because appeal was pursued solely for purpose of delay]), or a combination of the two standards (see, e.g., *Pierotti v. Torian* (2000) 81 Cal.App.4th 17, 32, fn. 9 [96 Cal.Rptr.2d 553] [frivolous nature of appeal provided evidence it was prosecuted solely for purpose of delay]), this appeal is frivolous.

In compliance with *Flaherty's* procedural requirements, we advised the parties we were considering the imposition of sanctions and pursuant to said advisement, we heard oral argument on the subject. Father's counsel filed a declaration seeking fees and grandparents' counsel responded thereto. This opinion constitutes the written statement of reasons required by *Flaherty*. (*In re Marriage of Flaherty, supra,* 31 Cal.3d at p. 654.)

■ An appeal that may have been meritorious when commenced can become frivolous by the occurrence of subsequent events which render the appeal moot. (*Hale v. Laden* (1986) 178 Cal.App.3d 668, 674-675 [224 Cal.Rptr. 182]; *Wax v. Infante* (1983) 145 Cal.App.3d 1029, 1031 [194 Cal.Rptr. 14].) It is the duty of appellants and their counsel promptly to dismiss an appeal once it becomes moot "and not put respondent, his counsel, and this court to the time and expense of reviewing an appeal that had become moot . . . ." (*Wax v. Infante, supra,* at p. 1031.)

■ Even assuming the appeal may have been meritorious when commenced, until the marriage is judicially annulled, Melissa's marriage emancipates her by operation of law. This state of affairs renders moot the appeal from the judgment denying the guardianship petition. Nonetheless, grandparents and their counsel persisted in prosecuting the appeal, thereby putting father and this court to needless time and expense.

Father's counsel, Freda D. Pechner, submitted a declaration and supporting exhibit seeking $22,803.75 in legal fees incurred in connection with this appeal. We have examined counsel's declaration and the opposition thereto and heard oral argument on this issue. Based thereon, we conclude the reasonable amount of the expenses incurred by father in defending this appeal following the July 2, 2001 marriage is $13,004.[7]

### DISPOSITION

The order to show cause is discharged. Father's motion to dismiss the appeal is granted and the appeal is dismissed. Father shall recover costs on appeal. In addition Melodye S. Hannes and Richard A. Marcus are directed to pay father $13,004 as sanctions for prosecuting a frivolous appeal.

The matter is referred to the State Bar for investigation. In that the dismissal is "based in whole or in part on the misconduct, incompetent representation, or willful misrepresentation of an attorney" (Bus. & Prof. Code, § 6086.7, subd. (b)), and because sanctions exceed $1,000 (Bus. & Prof. Code, § 6086.7, subd. (c)), the clerk of this court is directed forthwith to send a copy of this opinion to the State Bar.

Klein, P. J., and Kitching, J., concurred.

On April 11, 2002, the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied May 22, 2002. George, C. J., and Baxter. J., did not participate therein.

---

[7]The court is aware that a number of proceedings are pending in El Dorado County, including an action to annul the purported Bahamian marriage and a damages action against grandparents and their counsel. However, to reiterate, the only issue to be decided by this court in this opinion is whether the instant appeal is subject to dismissal, and the father's concomitant request for monetary sanctions.