Filed 10/31/13  Marriage of Andreiu CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re the Marriage of JEAN and PATRICE DE SAINT ANDRIEU. | |
| JEAN DE SAINT ANDRIEU,<br><br>        Appellant,<br><br>v.<br><br>PATRICE DEPAOLA,<br><br>        Respondent. | A137006<br><br>(San Mateo County<br>Super. Ct. No. FAM 090749) |

Facing incarceration for failure to comply with child and spousal support orders, Jean de Saint Andrieu (Husband) moved to set aside all current and prior support orders on the ground that his former wife, Patrice de Paola (Wife), had not fully disclosed her income.  The court denied Husband's first motion to set aside the orders based on information contained in Wife's 2010 tax return, and Husband moved for reconsideration.  The denial of Husband's motion for reconsideration is not appealable, and we therefore dismiss his appeal from that order.  Husband also separately moved to set aside the support orders based on information contained in Wife's 2007–2009 tax returns.  He appeals denial of this motion.  We address this appeal on the merits and affirm.

1

# I.   BACKGROUND

In this marital dissolution action, the trial court entered temporary child and spousal support orders in October 2007, and "permanent" child and spousal support orders in November 2008.[1]

In March 2009, the court found Husband in contempt for failing to comply with the support orders and sentenced him to 140 days in jail, with 110 days suspended on the condition that he comply with the support orders and make payments toward the arrearage. In July 2010, Husband sought modification of these orders and, in August 2010, the court agreed to suspend and purge the contempt sentence if he complied with certain conditions, including payment of arrearages.

In October 2010, Wife agreed to participate in mediation to help Husband avoid incarceration. The parties agreed to a new set of conditions to purge the contempt, which reduced Husband's debt by more than half and terminated his obligation to pay spousal support. Husband signed a stipulated order incorporating the revised conditions and new support obligations.

In October 2011, Husband again sought modification of the support orders, and the court modified the orders at a February 2012 hearing.

In April 2012, Husband moved to set aside October 2010 and February 2012 support orders pursuant to Family Code, section 3691, subdivisions (a) and (b).[2] (Hereafter the section 3691 motion.) He averred that, in January 2012, Wife provided him with a copy of her 2010 federal tax return,[3] which he had not previously seen and which reported interest and dividend income that she had not disclosed on her income and expense declarations. He asked that the 2010 and 2012 orders be set aside and that "new support payments be correctly calculated retroactively to include all of [Wife's]

---

[1] According to Wife, marital status was terminated in December 2007, and a final judgment on reserved issues was entered in May 2008.

[2] All statutory references are to the Family Code unless otherwise indicated.

[3] As to all of the tax returns mentioned in this opinion, the record includes only a copy of the first page of each return.

2

true and total income . . . from 2007–2012." Husband also filed a motion to modify the October 2010 and February 2012 child support orders based on a reduction in his income.

On June 5, 2012, the court denied Husband's motions. As to the motion to modify the support orders, the court denied relief because Husband was still in contempt for violating the orders. As to the section 3691 motion, the court found the allegation of fraud meritless, based in part on a finding that Wife provided an income and expense declaration to Husband during the October 2010 mediation that reflected trust and partnership distributions.[4] Husband promptly filed a motion for reconsideration of the denial of his section 3691 motion,[5] claiming he had never seen the October 2010 income and expense declaration until Wife presented it at the June 5 hearing. (Hereafter the section 3691 reconsideration.)

On June 19, 2012, the court ordered Husband to surrender on July 21 to serve the remaining 100 days of his contempt sentence. In August and again in October, Husband told the court he was serving the sentence through the sheriff's work program.

On July 6, 2012, Husband filed a motion to set aside judgments pursuant to section 2122.[6] He averred that, in March 2012, Wife showed him copies of her federal tax returns for 2007 to 2009, each of which reported tens of thousands of interest and dividend income that she had not previously disclosed. He requested that "all the judgments against me that were materially affected by the fraud, perjury, and failure to

---

[4] The copy of the October 2010 income and expense declaration in the record is not file-stamped. Wife produced this declaration at the June 5 hearing in opposition to Husband's section 3691 motion to rebut the claim that he first learned of the distributions in January 2012. She claimed Husband had been given the declaration during the October 2010 mediation and said that it had not been filed because the parties reached an agreement.

[5] Although the motion is file-stamped June 28, 2012, the court found that it was delivered to the court on June 18 and was thus timely filed.

[6] We refer to the motion filed on July 6, 2012 as the "section 2122 motion" to distinguish it from the section 3691 motion and the section 3691 reconsideration. However, as we discuss *post*, to the extent the section 2122 motion seeks relief that is not unavailable under section 2122, we construe the motion as seeking relief under section 3691.

3

comply with disclosure requirements . . . be immediately set aside for the years [2007 to 2012]."

Wife opposed the section 3691 reconsideration and the section 2122 motion and asked the court to declare Husband a vexatious litigant. At an October 2, 2012 hearing, the court denied both of Husband's motions and ordered Husband not to file any future motions without leave of the court. On November 1, Husband appealed the orders denying the section 3691 reconsideration and section 2122 motion.

## II. DISCUSSION

### A. *Appeal from the Order Denying Section 3691 Reconsideration*

Wife argues the appeal from the order denying Husband's motion for reconsideration must be dismissed. We agree.

"An order denying a motion for reconsideration made pursuant to [section 1008,] subdivision (a) is not separately appealable. However, if the order that was the subject of a motion for reconsideration is appealable, the denial of the motion for reconsideration is reviewable as part of an appeal from that order." (Code Civ. Proc., § 1008, subd. (g).) Husband appealed only from the order denying the section 3691 reconsideration, not the underlying June 2012 order denying the section 3691 motion. Because the order denying the section 3691 reconsideration is not appealable, this part of Husband's appeal must be dismissed.

Even if we were to construe Husband's November 1, 2012 notice of appeal as an appeal from the underlying order denying the section 3691 motion, the appeal would have to be dismissed as untimely. The clerk of the court mailed Husband a file-stamped copy of the underlying order on June 6. Ordinarily, an appeal must be filed within 60 days of such a mailing, which in this case fell on August 6. (Cal. Rules of Court, rule 8.104(a)(1).) Although a timely filed motion for reconsideration extends the appeal period, the extended period expires on the earliest of "(1) 30 days after the superior court clerk mails, or a party serves, an order denying the motion or a notice of entry of that order; [¶] (2) 90 days after the first motion to reconsider is filed; or [¶] (3) 180 days after entry of the appealable order." (Cal. Rules of Court, rule 8.108(e).) Here, the earliest of

4

those dates was 90 days after the motion to reconsider was filed in June, which fell in September.  The notice of appeal was not filed until November 1 and thus was untimely.

Accordingly, Husband's appeal from the order denying the section 3691 reconsideration must be dismissed.

B.      *Appeal from Order Denying Section 2122 Motion*

      1.      *Dismissal*

Wife argues that Husband's appeal from the order denying his section 2122 motion must be dismissed because it was not properly brought under the cited statute and because Husband forfeited his right to appeal under the disentitlement doctrine.  We disagree.

Wife first argues that the appeal of the order denying the section 2122 motion must be dismissed because the motion was brought under the wrong statute.  Section 2121 authorizes a trial court to relieve a spouse from "a judgment, or any part or parts thereof, adjudicating support or division of property, after the six-month time limit of Section 473 of the Code of Civil Procedure has run, based on the grounds, and within the time limits, provided in this chapter."  Section 3690 authorizes similar relief from "a support order, or any part or parts thereof."  (See also §§ 2122, 3691 [setting forth available grounds for the respective motions].)  Wife identifies the "judgment" in this action as the December 2007 judgment dissolving the marriage, and she argues that, because Husband sought to set aside support orders rather than this judgment in his section 2122 motion, the motion was improper.  Husband's motion sought relief from "all judgments" and specifically referenced the calendar years from 2007 through 2012.  As noted *ante*, however, the May 2008 judgment on reserved issues and November 2008 "permanent" support orders, are also arguably a part of the "judgment."

Even if we were to agree that Husband's section 2122 motion sought relief not available under that statute, we would still conclude that dismissal of the appeal is not required.  Wife does not cite authority for dismissal in such circumstances; she simply argues, "[Husband's] motion to the trial court for relief under . . . § 2122 was improper and his petition to this court for reversal of the trial court's denial of [the motion] is

similarly improper." Citing the wrong statute in a trial court motion, however, is not a jurisdictional defect. (See *Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 288 [lack of jurisdiction means an entire absence of power to hear or determine the case or action in excess of the court's authority].) Wife perhaps suggests that the appeal should be dismissed as frivolous. (See *Agricultural Labor Relations Bd. v. Tex-Cal Land Management, Inc.* (1987) 43 Cal.3d 696, 706 ["[w]hen a Court of Appeal determines that an appeal is frivolous, it may exercise its power to dismiss the appeal"].) However, Wife did not raise, and the trial court did not consider, the argument that the motion may have been brought brought under the wrong statute. Instead, the motion was decided on its merits. If construed as brought under section 3691, the motion was timely filed. (Cf. *In re Marriage of Zimmerman* (2010) 183 Cal.App.4th 900, 910–911 [affirming denial of a § 2122 motion because it sought relief only available under § 3691 and it was untimely filed under § 3691].) Further, the trial court specifically held that the section 2122 motion was not frivolous. We therefore conclude that dismissal is not warranted simply because Husband may have relied on the wrong statute in support of his motion.

Wife next invokes the disentitlement doctrine as a ground for dismissal. "An appellate court has the inherent power, under the 'disentitlement doctrine,' to dismiss an appeal by a party that refuses to comply with a lower court order. [Citations.] As the Supreme Court observed in *MacPherson v. MacPherson*[ (1939)] 13 Cal.2d [271,] 277, 'A party to an action cannot, with right or reason, ask the aid and assistance of a court in hearing his demands while he stands in an attitude of contempt to legal orders and processes of the courts of this state. [Citations.]' [¶] . . . [An] equitable rationale underl[ies] the doctrine. ' "Dismissal is not ' "a penalty imposed as a punishment for criminal contempt. It is an exercise of a state court's inherent power to use its processes to induce compliance" ' with a presumptively valid order. [Citation.]" [Citation.]' " (*Stoltenberg v. Ampton Investments, Inc.* (2013) 215 Cal.App.4th 1225, 1230.)

Wife argues the disentitlement doctrine should be applied here because in March 2009 Husband "was found guilty of 28 counts of contempt and sentenced to 140 days in county jail for failure to comply with numerous court orders. [Citation.] It is

6

clear that despite the egregious extent of his violation and utter disregard of the trial court's orders from the inception of this case, [Husband] continues to avail himself of the Court's time and attention. He filed motion after motion to modify, set aside and reconsider orders (the majority of which resulted from the trial court adopting voluntary stipulations entered into by [Husband] with the advice of counsel). All of [Husband's] requests, which were arguably filed with the sole intention of harassing and punishing [Wife], were denied."

We are unpersuaded. As noted, on June 19, 2012, the court ordered Husband to serve the 100 days remaining in his contempt sentence and stated, "[A]fter serving that, his contempt will be deemed purged." The court ordered him to surrender on July 21 to serve the remaining time under whatever arrangement he could make with the sheriff's department. In August and October, the court found that Husband was then serving his sentence, apparently through a work furlough program. We cannot conclude on this record that Husband remains in contempt. Moreover, the March 2009 contempt order did not arise from the same controversy that gave rise to the instant appeal, which was Wife's allegedly fraudulent nondisclosure of income first discovered in 2012 (or 2010 at the earliest). At the June 5, 2012 hearing, the trial court itself drew a similar distinction. Two motions were before the court: Husband's section 3691 motion to set aside support orders based on Wife's alleged fraud, and Husband's motion to modify the support orders based on a reduction in his income. Although Wife argued that both motions should be denied because Husband filed them solely for purposes of delay and harassment, the court treated them differently. The court denied Husband's motion to *modify* the support orders "because [Husband] is still adjudged in contempt and he has not purged himself of that contempt at this time." However, the court denied section 3691 motion on the merits. We similarly conclude that the disentitlement doctrine should not bar Husband's appeal of the section 2122 motion, which arises from alleged recently-discovered fraud committed by Wife.

Wife's cited cases on application of the disentitlement doctrine are distinguishable. In each of those cases, the doctrine supported dismissal because the

appellant was in contempt at the time of appeal, usually on directly related matters. (See, e.g., *In re Marriage of Hofer* (2012) 208 Cal.App.4th 454, 456–459 [appeal of order to pay legal fees on basis of insufficient evidence dismissed where appellant had refused to comply with discovery orders]; *Guardianship of Melissa W.* (2002) 96 Cal.App.4th 1293, 1296 [grandparents' appeal of custody order dismissed where they facilitated 16-year-old granddaughter's marriage in the Bahamas in violation of that order]; *Kottemann v. Kottemann* (1957) 150 Cal.App.2d 483, 484–488 [appeal of interlocutory judgment of divorce dismissed where, during pendency of appeal, appellant stopped paying support, failed to pay a fee order, went into hiding, and did not respond to court notices].) Wife has not shown here that Husband is currently in contempt of court or that the contempt arose from the controversy that gave rise to the appeal. Therefore, we decline to apply the disentitlement doctrine to bar this appeal.

Wife further suggests that we should apply the disentitlement doctrine because of Husband's alleged course of delaying and harassing litigation conduct throughout the divorce proceedings. The appropriate remedy for such behavior, however, is provided in the vexatious litigant statute, which triggers requirements for prefiling orders and posting of bonds for pro se litigants. (See Code Civ. Proc., § 391 et seq.) Wife made such a request in the trial court and the court ordered Husband to submit all future motions for review before filing. However, the court made a point of stating that the motions that are the subjects of this appeal were not frivolous: "[H]e was wrong but he had a reason for doing those." We find no authority for the proposition that a vexatious litigant finding would in turn require application of the disentitlement doctrine, and we decline to apply the doctrine in the context of this appeal.

In sum, we deny Wife's request that we dismiss Husband's appeal from the denial of his section 2122 motion.

2.      *Merits*

a.      *Scope of Review*

We first consider whether our dismissal of Husband's appeal from the denial of the section 3691 reconsideration affects the scope his appeal from denial of the

8

section 2122 motion. The original section 3691 motion and the later section 2122 motion sought overlapping relief: both sought recalculation of support orders throughout the history of the action. The section 3691 motion relied on the 2010 tax return and the section 2122 motion relied on the 2007–2009 tax returns. We conclude that, with respect to the October 2010 and February 2012 support orders, the section 2122 motion was an improper (or duplicative) motion for reconsideration of the court's denial of the earlier section 3691 motion. The section 2122 motion, therefore, was cognizable only with respect to support orders issued *before* October 2010 and Husband's appeal from the denial of the motion is similarly limited.

b. *Standard of Review*

We review a court's ruling under section 2122 or 3691 for abuse of discretion. (*In re Marriage of Rosevear* (1998) 65 Cal.App.4th 673, 682 [§ 2122]; *In re Marriage of Zimmerman, supra,* 183 Cal.App.4th at p. 906 [§ 3691].) Both statutes provide that the court "may, on any terms that may be just," relieve a party from a support order or a judgment adjudicating support if it "find[s] that the facts alleged as the grounds for relief materially affected the original outcome [or order] and that the moving party would materially benefit from the granting of the relief." (§§ 2121, subds. (a), (b); 3690, subds. (a), (b).) The moving party bears the burden of proving the material effect and material benefit. (*In re Marriage of Rosevear*, at pp. 684–685.)

c. *Evidence Presented*

In his section 2122 motion, Husband alleged that Wife committed fraud and perjury when she failed to disclose her full income in her income and expense declarations (which we limit here to the pre-October 2010 declarations) and her undated "Summary of Petitioner's Separate Property," which stated that she received no income from her interest in a family partnership, DFP Associates.

Wife's July 2007 income and expense declaration reported about $1,060 in monthly salary or wage income ($12,720 annually) and $200 in monthly dividend or interest income ($2,400 annually). A "DissoMaster Data Screen" printout in the record indicates that these income figures were used to calculate Husband's support obligations

9

in October 2007. Wife's 2007 federal income tax return reported $13,536 in salary or wage income, $3,853 in taxable interest, $30,394 in nontaxable interest ($34,247 total interest), $10,326 in ordinary dividends, and $8,956 in qualified dividends ($19,282 total dividends).[7]

Three 2008 income and expense declarations (filed by Wife in February, May and September 2008) reported an average of $1,194 in monthly salary and wage income ($14,328 annually) and $0 in monthly dividend and interest income. A DissoMaster Data Screen printout in the record indicates that the court estimated Wife's monthly income at $1,379 when it calculated Husband's "permanent" support obligations in November 2008.[8] Wife's 2008 federal income tax return reported income of $13,338 in salary and wages, $23,123 in taxable interest, $56,286 in nontaxable interest ($79,409 total interest), $23,361 in ordinary dividends, and $14,522 in qualified dividends ($37,883 total dividends).

Wife's 2009 federal tax return reported $14,115 in salary and wages, $1,815 in taxable interest, $14,748 in tax-exempt interest ($16,563 total interest), $11,848 in ordinary dividends, and $663 in qualified dividends ($12,511 in total dividends). Wife's October 2010 income and expense declaration (apparently the first declaration completed after the September 2008 declaration) reported "a one-time distribution of $27,000 from DDJK Partnership[9] and also . . . a one-time distribution from my Grandfather's Trust in the sum of $100,000." The declaration reported $740.31 in average monthly income ($8,883.72 annually) and no interest and dividend income. Wife's 2010 federal tax return

___

[7] Although the 2007 federal income tax return is an attachment to Husband's post-appeal November 30, 2012 ex parte application for automatic stay of enforcement of the orders on appeal, the record demonstrates that the tax returns were before the court at the October 2, 2012 hearing.

[8] In the November 2008 order, the court also specifically found that Wife "receives no income from her interest in her Family Limited Partnership."

[9] "DDJK" is identified on Wife's income and expense declarations as a home loan creditor who was owed $145,000 in July 2007, about $160,000 in February 2008, and about $168,000 later in 2008.

reported $11,412 in salary and wages, $6,705 in taxable interest, $14,990 in tax-exempt interest ($21,695 in total interest), $30,072 in ordinary dividends, and $13,254 in qualified dividends ($43,326 in total dividends).

In opposition to the section 2122 motion, Wife filed a declaration by Charles Feuerstein, the secretary treasurer of DFP Corporation, which was the sole general partner of the family limited partnership.[10] Feuerstein averred that DFP Associates "is an investment partnership formed in 1992 by [Wife's] grandfather . . . [¶] . . . After [his] death in 2007, his four children . . . became the sole stockholders and sole directors of DFP Corp., the sole general partner of DFP. . . . [T]he Board of Directors have from time to time authorized distributions. . . . Part of the distribution is reserved for the tax liability associated with each individual's share of the partnership income. [¶] . . . To date [Wife] has received the following distributions: [¶] a. 2008: $26,975.34 [¶] b. 2009: $27,001.22. [¶] c. 2010: $30,279.59 [¶] d. 2011: $30,380.87."[11]

At the October 2, 2012 hearing on the motion, Wife's counsel denied that she failed to disclose her full income. She argued that the 2007 and 2008 income and expense declarations did not disclose partnership distributions because she first received distributions in late 2008, after the last (September) 2008 declaration was filed; she disclosed the distributions in her October 2010 and January 2012 declarations and also filed a copy of the partnership agreement with the court. She argued, "In terms of the interest [and] dividend income those were not funds that were ever actualized by my client. [Husband] is well aware of this because . . . when tax returns were filed jointly, those funds were still noted in the tax returns but it was never money that was actualized by the parties because those funds are . . . taken directly and put back through the partnership to pay for the partnership taxes. So those are not funds that are received. It is

---

[10] Wife also filed a personal declaration that provided little information responsive to Husband's allegations of fraud and perjury.

[11] Wife's January 2012 income and expense declaration reported $426 in monthly salary and wage income ($5,112 annually) and $2,531.67 in monthly interest and dividend income ($30,380.04 annually).

11

clearly stated in [the Feuerstein] declaration." Email correspondence attached to Husband's motion confirms that Husband was aware of Wife's position regarding the interest and dividend income long before the October 2012 hearing.

### d. *Trial Court Ruling*

The court ruled, "[T]he moving party has not met its burden to show there was actual fraud or perjury going all the way back to every order basically that has been entered in this case."

### e. *Discussion*

The trial court did not abuse its discretion in denying the motion. Substantial evidence in the record supported a finding that Wife disclosed the distributions she received from the family partnership in October 2010 and January 2012. Those distributions presumably accounted for some of the dividends reported on Wife's tax returns. Regarding the remaining interest and dividend income reported on the tax returns and missing from the declarations, Wife's counsel provided a plausible explanation at the October 2, 2012 hearing (that the income was redirected to the partnership and thus did not materially benefit Wife) and Husband, who had been informed of Wife's position long before the hearing and who had access to the partnership agreement, offered no rebuttal. The court could therefore reasonably find that Husband failed to prove fraud with respect to that income. Finally, the parties stipulated to a mediated support order in October 2010 that substantially reduced Husband's support obligations from the levels justified by Wife's income and expense declarations. Therefore, Husband failed to establish that setting aside the 2007–2009 support orders would materially benefit him by leading to a reduction to or a credit against the support payments he was obligated to make under the October 2010 or February 2012 orders. (See *In re Marriage of Rosevear, supra,* 65 Cal.App.4th at p. 685 [wife failed to show

that setting aside support judgment would lead to more beneficial division of property from agreement reached during settlement conference].)[12]

### III. DISPOSITION

Appeal from the trial court's denial of Husband's June 2012 motion to reconsider (the section 3691 reconsideration) is dismissed. The trial court order denying Husband's July 2012 motion to set aside the support orders (the section 2122 motion) is affirmed. Husband shall pay Wife's costs on appeal.

_____
Bruiniers, J.

We concur:

_____
Simons, Acting P. J.

_____
Needham, J.

---

[12] We deny Wife's motion to impose monetary sanctions on Husband for filing a frivolous appeal. The appeal was not frivolous.

13