Filed 1/28/21  In re L.W. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re L.W., a Person Coming Under the Juvenile Court Law. | B305049 (Los Angeles County  Super. Ct. Nos. 20CCJP00208, 20CCJP00208A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. M.W., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Sabina A. Helton, Judge.  Dismissed.

John P. McCurley, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Assistant County Counsel, and Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

Mother M.W. appeals from the juvenile court order establishing jurisdiction over her son, L., pursuant to Welfare and Institutions Code section 300.[1]  Mother contends that there was insufficient evidence to establish that L. was at risk of harm.  However, after the juvenile court removed L. from mother's custody at the dispositional hearing, mother absconded with L. to Mexico.  We conclude that under the disentitlement doctrine, mother may not obtain review of the juvenile court's order and at the same time be in contempt of the very order from which she appeals.  We therefore dismiss the appeal.

## BACKGROUND

### *Petition and Detention Report*

Mother and father, A.Z., have one child together, L., born in 2008.[2]  Prior to the incident at issue, mother had full custody of L. and father lived in Mexico.

On November 21, 2019, the Los Angeles County Department of Children and Family Services (DCFS) received a referral regarding a domestic violence incident between mother and her boyfriend.  The reporting party stated that on November 19, 2019, mother drank a bottle of wine and then got into a physical altercation with her boyfriend while L. (then 11 years old) was sleeping in the home.  The police reported damage and broken items throughout the home.  Mother's boyfriend told police that during the fight she bit him on the forearm and kicked him.

---

[1]All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2]Father is not a party to this appeal.

In an interview with a DCFS children's social worker (CSW) on November 26, 2019, mother admitted drinking after L. went to sleep and said the broken glass in the home was from a glass jar of coins she accidentally dropped. Mother told the CSW that she had an argument with her boyfriend but did not remember biting him, although she did not deny doing so. In addition, mother reported an incident in 2018 when she cut her wrists, also after drinking alcohol. She told the CSW that she was hospitalized after the 2018 incident "until I got sober," but did not receive further mental health services after her release. L. denied witnessing any altercations between mother and her boyfriend and reported that he had only seen mother drunk on one occasion.

DCFS filed a petition on January 14, 2020 under section 300, subdivisions (a) and (b)(1). The petition alleged in paragraphs a-1 and b-1 that on November 19, 2019, mother and her boyfriend engaged in a violent altercation in the home where mother and L. lived. During this altercation, mother bit her boyfriend's arm and kicked him in the head. The petition further alleged that L. was previously under the juvenile court's jurisdiction due to mother's violent conduct.[3] In paragraph b-2, the petition alleged that mother had a history of substance abuse and was a current abuser of alcohol and marijuana. Mother was under the influence of alcohol on November 19, 2019, while L. was in mother's care. The petition also alleged that mother had

---

[3]The family had a prior dependency case based on a 2011 incident of domestic violence against mother by a different boyfriend. The case closed in 2014 after mother fully complied with court orders.

prior criminal convictions for driving under the influence (DUI). Paragraph b-3 alleged that mother had mental and emotional problems, including suicidal ideations, and that she was involuntarily hospitalized for her psychiatric condition in 2018.

At the detention hearing on January 15, 2020, the court found there was a prima facie case for jurisdiction over L. pursuant to section 300, and no reasonable means available to protect L. without removing him.  The court therefore removed L. from mother, ordered monitored visitation, and placed the child with maternal grandmother.

### Jurisdiction and Disposition

DCFS filed its jurisdiction/disposition report on January 30, 2020.  Mother told DCFS that she had stopped drinking because "when I drink . . . [t]hings tend to get out of hand."  She also claimed that the incident was "not that big of a deal" and just "a simple argument" between her and her boyfriend.  She admitted getting a citation for DUI in 2019.  Mother denied any suicidal behavior and stated she had cut her wrist in 2018 by accident while drunk.  Mother told DCFS that father was in Mexico and did not have frequent contact with L.

DCFS reported that L. could not safely return to mother's care because of mother's violent behavior toward her boyfriend, her unaddressed alcohol abuse, and her mental health issues, which placed L. at risk and created a detrimental home environment.  DCFS also noted that mother was minimizing the November 2019 incident.

The court held the adjudication hearing on January 31, 2020.  Mother signed a plea waiver and entered a no contest plea to paragraph b-2.  Accordingly, the court found the allegations of paragraph b-2 true as amended:  that mother "has a history of

substance abuse and is a current abuser of alcohol, which renders the mother incapable of providing regular care and supervision of the child.  On 11/19/2019, the mother was under the influence of alcohol while the child was in the mother's care and supervision.  The mother has criminal convictions for . . . DUI.  While under the influence, mother has engaged in self-harm and violent conduct.  The mother's substance abuse endangers the child's physical health and safety, creates a detrimental home environment, and places the child at risk of serious physical harm, damage, and danger."  The court dismissed the remaining paragraphs.  The court ordered L. to remain detained with maternal grandmother under DCFS supervision.

In a last-minute information filed on February 21, 2020, DCFS reported that mother tested positive for marijuana on November 28, 2019 and January 30, 2020, then missed her scheduled drug tests on January 31 and February 5, 2020.  Mother then tested positive for marijuana on February 8, 2020.

At the disposition hearing on February 21, 2020, mother testified that she had a "drinking problem" but had been sober for the past three months.  She stated that she had been attending Alcoholics Anonymous meetings, counseling, and parenting and domestic violence classes.  She wanted L. returned to her care and was willing to have maternal grandmother live with them.  She also acknowledged that she had two DUI convictions and a psychiatric hospitalization related to her drinking.  Mother denied regularly using marijuana and testified that she would eat a marijuana edible cookie to help her sleep instead of taking medication.

Counsel for DCFS argued that mother had "little to no insight about her alcohol problem," noting that mother's

completion of programs from her DUI convictions, as well as her hospitalization after cutting herself, did not cause her to stop drinking. DCFS's counsel also contended that mother minimized the recent domestic violence incident and continued to use marijuana despite claiming to be sober. L.'s counsel also opposed releasing the child to mother, citing mother's pattern of drinking and her recent drug testing with "high levels of marijuana followed by a no-show." Mother's counsel argued for releasing L. to mother, based on mother's recent sobriety and her willingness to cooperate with DCFS to put a safety plan in place.

Citing mother's testimony, the court found she lacked insight "into her true substance addiction issue," and that "when mother has excessive amounts of alcohol, it leads to violent and self-harming behaviors." Accordingly, the court found by clear and convincing evidence that removal of L. from mother was necessary and that DCFS made reasonable efforts to prevent removal. The court ordered family reunification services and monitored visitation for mother. The court set a three-month progress report hearing for May 14, 2020 to assess mother's progress and see "if it's possible to entertain a return to home of mother." Mother timely appealed on February 24, 2020.

***Subsequent Developments***

In a May 2020 last-minute information, DCFS reported that mother had 17 scheduled drug tests between January 29 and May 4, 2020, but failed to test on 10 occasions. The remaining seven tests were positive for marijuana. Mother was displaying COVID-19 symptoms from mid-March to mid-April. In April, DCFS began to make arrangements for alternative placement of L. after maternal grandmother stated she intended to return to Mexico. Mother agreed to have her boyfriend serve as the

6

caregiver.  On May 7, 2020, the boyfriend told DCFS that he no longer wished to be L.'s caregiver and had not seen L. since "sometime last week."  Maternal great-grandmother reported that mother had taken L. from her home on May 4, 2020 in the middle of the night, stating that she was taking the child to Mexico.

On May 12, 2020, the court found that mother was at large with L. and issued a protective custody warrant for L. and an arrest warrant for mother.[4]

The CSW called mother later that day.  Mother answered the phone and told the CSW that she was in Mexico and that the court was asking too much of her.  She told the CSW that she could not find a drug and alcohol outpatient program and there was "no other way around it."  Mother stated she planned to stay in Mexico.  When the CSW explained that the court had issued warrants for her and for L., mother replied that it did not matter because she was never going to return.

## DISCUSSION

Mother challenges the court's dispositional finding that removal was necessary to protect L. from risk of harm. Respondent DCFS contends that we should decline to reach the merits of mother's challenge and dismiss the appeal under the disentitlement doctrine.  We agree with respondent that dismissal is warranted.

The disentitlement doctrine refers to a reviewing court's "inherent power to dismiss an appeal by a party who has refused

---

[4]We granted respondent's request for judicial notice of the court's May 12, 2020 minute order and May 26, 2020 last minute information.

to comply with the orders of the trial court." (*People v. Puluc-Sique* (2010) 182 Cal.App.4th 894, 897.) It "is not a jurisdictional doctrine, but a discretionary tool that may be applied when the balance of the equitable concerns make it a proper sanction." (*Ibid*.) "'The case for application of the doctrine is most evident where, as here, the party is a fugitive who refuses to comply with court orders or make an appearance despite being given notice and an opportunity to appear and be heard.'" (*In re Kamelia S.* (2000) 82 Cal.App.4th 1224, 1229 (*Kamelia S*.), quoting *Adoption of Jacob C.* (1994) 25 Cal.App.4th 617, 624.)

In the dependency context, given the enormity of the interest at stake for a parent, courts have rarely applied the disentitlement doctrine to dismiss a parent's appeal. One key exception, however, is where a parent removes the child from the jurisdiction in violation of the court's orders. For example, in *Kamelia S., supra*, 82 Cal.App.4th at p. 1225, a father absconded with his daughter after the juvenile court placed the child in foster care. The court held the father was barred by the disentitlement doctrine from appealing the placement order as "[i]t is illogical and inequitable for appellant to seek appellate review of the very orders he has blatantly violated." (*Id*. at p. 1227.) The court reasoned that the father's "intentional absence violates the orders of the juvenile court and his secluding the minor child undermines and frustrates the entire purpose of the dependency law," making it "virtually impossible for the court to extend its protection" to the child at an unknown location. Thus, disentitlement was appropriate because the father was "entirely responsible for paralyzing the court's ability to implement the procedures intended to benefit the interests of the dependent minor. He 'stands in an attitude of contempt to legal orders and

8

processes of the courts of this state.'" (*Id.* at p. 1229, quoting *MacPherson v. MacPherson* (1939) 13 Cal.2d 271, 277; see also *In re E.M.* (2012) 204 Cal.App.4th 467, 469-471 [applying doctrine to dismiss mother's appeal of jurisdictional findings because she "willfully left the jurisdiction with her children while the petition was pending"]; *In re Guardianship of Melissa W.* (2002) 96 Cal.App.4th 1293, 1299 [grandparents could not appeal denial of guardianship petition after they caused minor to be removed from the jurisdiction in violation of court order]; *Adoption of Jacob C., supra*, 25 Cal.App.4th at pp. 623–624 [barring mother who had abducted child from contesting petition to terminate mother's parental rights to other child].)

Mother acknowledges the application of disentitlement to cases, such as this one, where a parent appeals a dependency order and then "subsequently leaves the jurisdiction with the child in violation of the court's orders." Nevertheless, she urges us to reach the merits of her appeal because the case has been fully briefed and there is "little to be gained" from dismissing the appeal. We find the reasoning of *Kamelia S.* squarely applicable to this case. Mother was an active participant in the underlying dependency proceedings until she violated the court's orders by removing L. from his placement and taking him out of the reach of the court's protective powers. Her conduct "undermines and frustrates the entire purpose of the dependency law." (*Kamelia S., supra,* 82 Cal.App.4th at p. 1229.) As such, we conclude that mother cannot pursue her appeal of the very orders she has flagrantly violated. (See *In re E.E.* (2020) 49 Cal.App.5th 195, 208 ["When a parent's violation of a juvenile court's orders makes the most crucial aspect of that court's job impossible, it stands to reason they should not be able to ask a reviewing court to

9

overturn the juvenile court's orders."].)

Under the circumstances, the doctrine of disentitlement is applicable to mother. We therefore dismiss this appeal.

**DISPOSITION**

The appeal is dismissed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.


We concur:


WILLHITE, ACTING P.J.


CURREY, J.